## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LIBERTY STATE BENEFITS OF DELAWARE INC., *et al.*, | Case No. 11-12404 (KG) |
|  | (Jointly Administered) |
| Debtors. |  |
| RICHARD W. BARRY, As Chapter 11 Trustee For the estates of LIBERTY STATE BENEFITS OF DELAWARE, INC, *et al.*, |  |
| Plaintiff, | Adv. No. 14-50020 (KG) |
| -against-. |  |
| SANTANDER BANK, N.A. formerly known as Sovereign Bank, N.A., | **Ref. No. 24** |
| Defendant. |  |

## THE CHAPTER 11 TRUSTEE'S ANSWERING BRIEF IN OPPOSITION
## <u>TO THE MOTION OF SANTANDER BANK, N.A. TO DISMISS</u>

Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  mumford@lrclaw.com
         brown@lrclaw.com

Carl W. Oberdier
Kellen G. Ressmeyer
**OBERDIER RESSMEYER LLP**
655 3rd Avenue, 28th Floor
New York, New York 10017
Telephone: (212) 659-5141
Facsimile: (646) 349-4925
Email:  cwo@oberdier.com
         kgr@oberdier.com

*Special Litigation Co-Counsel*
*For the Chapter 11 Trustee*

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................................ 1

Counter-Statement Of Facts ................................................................................................. 3

I.   The Complaint ................................................................................................................ 3

II.  Santander's Relationship With The Fraud-Doers ....................................................... 3

III. Theft Of The Ministrelli Trust ..................................................................................... 4

      A.     Santander's False Notarizations .................................................................. 5

            1.     The Fraudulent Appointment Of Chalmers
                   As Successor Trustee .......................................................... 5

            2.     The Fraudulent Sale Of The Ministrelli Trust ...................... 6

            3.     The Fraudulent Assignment Of The Sale Proceeds ............... 7

      B.     Santander's Unlawful Account Openings .................................................... 8

      C.     Santander's Knowledge Of The Conspirators'
            Money Laundering ......................................................................... 9

IV. Santander's Cover-Up Of Its Complicity In The Ministrelli Theft ......................... 10

V.   "Hope Now" Fraud ...................................................................................................... 12

VI. MKwasnik Ponzi Scheme ......................................................................................... 13

VII. Theft Of The Lacey Property .................................................................................... 14

Argument ................................................................................................................................ 14

I.   Standards On A Motion To Dismiss ......................................................................... 14

II.  The Doctrine Of In Pari Delicto
     Does Not Bar The Trustee's Claims .......................................................................... 16

      A.     Santander's *In Pari Delicto* Defense is Premature ....................................... 16

      B.     The Trustee's Counter-Defenses To *In Pari Delicto*
            Also Render Its Application Inapproprate At This Stage ........................... 17

            1.     The Alleged Wrongdoing Was  Completely
                   Adverse To The Debtors' Interests ................................... 18

            2.     The Pre-Filing Appointment of A  Fiscal Agent
                   "Cleansed" the Debtors ..................................................... 19

III. The Complaint Establishes Claims Under NJRICO ................................................. 20

      A.     The Complaint Adequately Alleges Causation ............................................. 21

1.   Santander Ignores the Complaint's Actual Allegations ...................... 21

2.   Proximate Causation Is Question For The Factfinder ......................... 23

3.   The Trustee Is Not Required to Establish That
     Santander's Conduct By Itself Caused the Debtors' Injuries .............. 23

B.   Santander Concedes That The Complaint Alleges
     Conduct Cognizable As A NJRICO "Enterprise" .......................... 24

C.   The Complaint Adequately Alleges Santander's
     Purposeful Participation In the Enterprise .................................... 25

1.   Santander Is Vicariously Liable for
     Its Employees' Improper Notarizations .................................... 27

2.   The Complaint Adequately Pleads Santander's
     Actual Knowledge of the Conspirators' Fraudulent Schemes ............ 28

D.   The Complaint Alleges A Racketeering "Pattern" ......................... 31

E.   The Complaint Establishes Numerous Predicate Acts .................... 33

1.   The Complaint Adequately Pleads Santander's Intent ........................ 33

2.   The Complaint Adequately  Pleads Santander's
     Substantial Assistance .......................................................... 33

3.   The Complaint Adequately Pleads  Predicate
     Acts Of Falsifying Records, Forgery  And
     Fraudulent Practices, And Theft By Deception ................................. 34

4.   The Complaint Adequately Alleges Bank Fraud ................................ 34

IV.  The Complaint Alleges Santander's  Participation In
     A Federal RICO Conspiracy ...................................................... 35

V.   The Complaint Alleges A Cognizable  Claim Under
     The New Jersey Consumer Fraud Act ........................................... 36

VI.  The Complaint States A Claim For Negligence................................. 37

VII. The Complaint Establishes Aiding  And Abetting
     Conversion, Fraud, And  Breach of Fiduciary Duty (Counts V-VIII) ...................... 38

VIII. The Complaint States A Claim  For Unjust Enrichment (Count IX) ...................... 39

IX.  The Complaint States A Claim  For Failure To Train And Supervise....................... 39

X.   Santander Does Not Challenge Leave To Amend .................................... 40

Conclusion............................................................................... 40

# TABLE OF AUTHORITIES

## CASES

*Abell v. Potomac Ins. Co. v. Illinois,*
    846 F.2d 1160 (5th Cir. 1991)................................................................32

*Accord Franklin Medical Assocs. v. Newark Pub. Sch.,*
    362 N.J. Super. 494 (N.J. Ct. App. 2003) ...............................................25

*Adelphia Comm'n Corp. v. Bank of America (In re Adelphia Commc'ns Corp.),*
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) ......................................................17

*ADS Assocs. Gp., Inc. v. Oritani Sav. Bank,*
    2011 WL 6820302 (N.J. App. Ct. Dec. 29, 2011) ....................................37

*Alston v. Parker,*
    363 F.3d 229 (3d Cir. 2004)...................................................................40

*Amboy Bank v. Oakshire Group, LLC,*
    2011 WL 2304182 (N.J. Super Ct., App. Div. May 13, 2011) ...................30

*Baena v. KPMG LLP,*
    453 F.3d 1 (1st Cir. 2006) ......................................................................18

*Beadling v. William Bowman Assocs.,*
    355 N.J. Super. 70 (N.J. App. Div. 2002) ................................................23

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................15

*Bondi v. Bank of Am. (In re Parmalat),*
    383 F. Supp. 2d 587 (S.D.N.Y. 2005)..............................................18, 33

*Brody v. Hankin,*
    145 Fed. Appx. 768 (3d Cir. 2005) ...................................................15, 16

*Capital First Corp. v. Todd,*
    2006 WL 3827329 (D.N.J. Dec. 27, 2009) ..............................................33

*Clear Advantage Title, Inc. v. Gibb (In re Clear Advantage Title, Inc.),*
    438 B.R. 58 (D.N.J. 2010) ......................................................................38

*Com of Pa. v. Brown,*
    373 F.2d 771 (3d Cir. 1967).....................................................................25

*Comm'l Union Ins. Co. v. Burt Thomas-Aitken Constr. Co.,*
    49 N.J. 389 (N.J. 1967) .....................................................................27, 28

*Cowher v. Carson & Roberts,*
    425 N.J. Super. 285 (N.J. Sup. Ct. Apr. 18, 2012)....................................23

*Desmond v. Siegel,*
  2012 WL 3228681 (D.N.J. Aug. 6, 2012)............................................................22

*Dici v. Penn,*
  91 F.3d 542 (3d Cir. 1996)..................................................................................34

*Drabkin v. L&L Const. Assoc.,*
  168 B.R. 1 (Bankr. D.D.C. 1993).........................................................................18

*Eli Lilly & Co. v. Roussel Corp.,*
  23 F. Supp. 2d 460 (D.N.J. 1998).......................................................................25

*Emcore Corp. v. PwC LLP,*
  102 F. Supp. 2d 232 (D.N.J. 2000).....................................................................36

*Evergreen Solar, Inc. v. Barclays, PLC (In re Lehman Bros., Inc.),*
  2011 WL 722582 (S.D.N.Y. Feb. 22, 2011).......................................................16

*Failla v. City of Passaic,*
  146 F.3d 149 (3d Cir. 1998)..........................................................................21, 34

*Ford Motor Co. v. Edgewood Props.,*
  2009 WL 150951 (D.N.J. Jan. 20, 2009).......................................................25, 31

*Ford Motor Co. v. Edgewood Props.,*
  2012 WL 4172133 (D.N.J. Aug. 31, 2012)..........................................................21

*Forman v. Salzano (In re Norvergence, Inc.),*
  405 B.R. 709 (D.N.J. 2009).................................................................................18

*G-I Holdings, Inc. v. Baron & Budd,*
  238 F. Supp. 2d 521 (S.D.N.Y. 2002)............................................................15, 34

*Gonzalez v. Wilshire Credit Corp.,*
  207 N.J. 557 (N.J. 2011).....................................................................................37

*Guidotti v. Legal Helpers Debt Resolution, LLC,*
  855 F. Supp. 2d 315 (D.N.J. 2011).....................................................................25

*Harnish v. Widener Univ.,*
  931 F. Supp. 2d 641 (N.J. Sup. Ct. 2013)...........................................................36

*Hecht v. Malvern Prep. Sch.,*
  716 F. Supp. 2d 396 (E.D. Pa. 2010)..................................................................39

*Hill v. Equitable Bank,*
  655 F. Supp. 631 (D. Del. 1987)....................................................................26, 36

*Hinton v. Dep't of Justice,*
  833 F.2d 126 (3d Cir. 1988)................................................................................16

*HJ, Inc. v. Nw Bell Tel. Co.,*
   42 U.S. 229 (1989) ........................................................................................... 31

*In re Campbell Soup Co. Sec. Litig.,*
   145 F. Supp. 2d 574 (D.N.J. 2001) ................................................................. 26

*In re Direct Response Media, Inc.,*
   466 B.R. 626 (Bankr. D. Del. 2012) ......................................................... 14, 15

*In re E.S. Bankest, L.C.,*
   2010 WL 2926203 (S.D. Fla. Bankr. July 23, 2010) ................................... 19

*In re Edgewater Med. Ctr.,*
   332 B.R. 166 (Bankr. N.D. Ill. 2005) ............................................................ 19

*In re Federal-Mogul Global Inc.,*
   2007 WL 4180545 (Bankr. D. Del. Nov. 16, 2007) ..................................... 16

*In re Hechinger Investment Co. of Del., Inc.,*
   282 B.R. 149 (D. Del. 2002) .......................................................................... 16

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
   66 F. Supp. 2d 622 (E.D. Pa. 1999) ............................................................. 26

*In re Midlantic Corp. Shareholder Litig.,*
   758 F. Supp. 226 (D.N.J. 1990) .............................................................. 25, 26

*In re Nature's Sunshine Prods. Sec. Litig.,*
   486 F. Supp. 2d 1301 (D. Utah 2008) .......................................................... 27

*In re NUI Sec. Litig.,*
   314 F. Supp. 2d 388 (D.N.J. 2004) ............................................................... 27

*In re Tyco Int'l Ltd.,*
   2007 WL 7687755 (D.N.H. June 11, 2007) ................................................. 26

*Interchange State Bank v. Veglia,*
   668 A.2d 465 (N.J. Ct. App.  Dec. 26, 1995) ............................................... 21

*Jean-Laurent v. Wilkerson,*
   461 Fed. Appx. 18 (2d Cir. 2012) ................................................................. 15

*Kirschner v. Wachovia Capital Mkts., LLC (In re Le-Nature's Inc.),*
   2009 WL 3571331 (W.D. Pa. Sept.16, 2009) ........................................ 19, 20

*Krasny v. Bagga (In re Jamuna Real Estate LLC),*
   2010 WL 2773395 (E.D. Pa. Dec. 20, 2006) ............................................... 31

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 273 (2d Cir. 2006) .......................................................................... 30

*Local 731 I.B. of T. Excavators and Pavers Pension Trust v. Swanson,*
  2011 WL 2444675 (D. Del. June 14, 2011) ..................................................27

*Mayo, Lynch & Assocs., Inc. v. Pollack,*
  351 N.J. Super. 486 (N.J. App. Ct. 2002) .............................................33, 34

*Metz v. United Counties Bancorp,*
  61 F. Supp. 2d 364 (D.N.J. 1999) ..............................................................32

*Miller v. Greenwich Capital Financial Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.),*
  361 B.R. 747 (Bankr D. Del. 2007) ............................................................16

*Monsen v. Consol. Dressed Beef Co., Inc.,*
  579 F.2d 793 (3d Cir. 1978)........................................................................27

*Morgan v. Union Cty. Bd. of Chosen Freeholders,*
  268 N.J. Super. 337 (N.J. App. Ct. 1993) ..................................................35

*New Jersey Title Ins. Co. v. Caputo,*
  163 N.J. 143 (2000)....................................................................................30

*O'brien v. Cleveland (In re O'brien),*
  423 B.R. 477 (Bankr. D.N.J. 2010).............................................................37

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*
  267 F.3d 340 (3d Cir. 2001)........................................................................17

*Official Committee of Unsecured Creditors of Allegheny Health, Ed. and Res. Found. v.
  PricewaterhouseCoopers,*
  607 F.3d 346 (3d Cir. 2010)........................................................................18

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Secs. LLC),*
  721 F.3d 54 (2d Cir. 2013) .........................................................................17

*Pricaspian Dev. Corp. v. Gonzalez,*
  2013 WL 5674202 (D.N.J. Oct. 16, 2013)...................................................30

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.,*
  2013 WL 1431680 (D.N.J. Apr. 9, 2013) ................................24, 25, 34, 38

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.,*
  828 F. Supp. 287 (D.N.J. 1993) ..................................................................23

*Reyes v. Egner,*
  404 N.J. Super. 433 (N.J. App. Ct. 2009) ..................................................23

*Rolo v. City Inv. Co. Liquidating Trust,*
  155 F.3d 644 (3d Cir. 1998)........................................................................33

*Roth v. Marina Assocs.,*
  2009 WL 2496803 (D.N.J. Aug. 11, 2009)..................................................23

iv

*Salinas v. United States,*
    522 U.S. 52 (1997) ................................................................................. 35

*Smith v. Berg,*
    237 F.3d 532 (3d Cir. 2001) ................................................................... 35

*Stanziale v. McGladrey & Pullen LLP (In re Student Fin. Corp.),*
    2006 WL 2346373 (D. Del. Aug. 10, 2006) ...................................... 16, 17

*State v. Ball (Ball I),*
    268 N.J. Super. 72 (N.J. App. Div. 1993) ..................................... *passim*

*State v. Ball,*
    141 N.J. 142 (N.J. 1995) ................................................................ 20, 24

*State v. Motley,*
    2006 WL 848296 (N.J. App. Ct. Apr. 3, 2006) .................................... 34

*Thabault v. Chait,*
    541 F.3d 512 (3d Cir. 2008) ................................................................... 16

*U.S. v. PECO Energy,*
    897 F. Supp. 2d 300 (E.D. Pa. 2012) .................................................... 27

*Unencumbered Assets Trust v. J.P. Morgan Bank (In re Nat'l Century Fin. Enters.),*
    617 F. Supp. 2d 700 (S.D. Ohio May 11, 2009) .................................. 18

*Wiley v. Hughes Capital Corp.,*
    746 F. Supp. 1264 (D.N.J. 1990) .......................................................... 26

*Zazzali v. Hirschler Fleischer, P.C.,*
    482 B.R. 495 (D. Del. 2012) .................................................................. 17

## STATUTES

18 U.S.C. § 1962(d) .................................................................... 2, 3, 35

N.J. STAT. ANN. § 56:8-1 ................................................................... 3

N.J. STAT. ANN. § 2C:41-2 ....................................................... *passim*

N.J. STAT. ANN. § 3B:14–55 ............................................................. 30

N.J. STAT. ANN. § 2C:41-1d(2) ......................................................... 32

N.J. STAT. ANN. § 3B:14–55 ............................................................. 30

N.J.S.A. 56:8-2 ................................................................................. 36

## RULES

FED. R. CIV. P. 8(a) ........................................................................... 36

FED. R. CIV. P. 12 (b)(6) ..........................................................................................*passim*

Other Authorities

RESTATEMENT (SECOND) OF TORTS § 875(b) ...................................................................33

Richard W. Barry, the Chapter 11 Trustee (the "**Trustee**") of the estates of the above-captioned debtors (the "**Debtors**"),[1] by and through his undersigned counsel, respectfully submits this answering brief in opposition to the motion of defendant Santander, N.A. ("**Santander**") to dismiss the Trustee's Complaint ("**Dismissal Motion**" or "**MTD**") (D.I. 24).[2]

## PRELIMINARY STATEMENT[3]

From the first page of its motion, Santander serves notice that the usual rule under Fed. R. Civ. P. 12(b)(6), whereby the Court must accept as true all allegations in the complaint and draw all reasonable inferences in a light most favorable to the plaintiff, has been abrogated. Santander repeatedly contradicts the Complaint's allegations with alleged facts drawn from deposition testimony, third-party affidavits, the Trustee's pleadings in other proceedings, Santander's own internal documents and other facts that appear nowhere in the Complaint. Santander's extraneous factual assertions are punctuated with charges that the Complaint's allegations are "dissembling" (MTD 6), "plainly misleading," (MTD 8), "specious" (MTD 11), "incorrect," (MTD at 9), "artful" (MTD at 4), and "sharp pleading" (MTD 10).

And this is no mere flight of rhetorical excess; each of Santander's legal arguments for dismissal assumes the truth of Santander's facts, not the Complaint's.

---

[1] The Debtors in these cases are Liberty State Benefits of Delaware Inc. ("**LSBDE**") (Case No. 11-12404 (KG)), Liberty State Benefits of Pennsylvania, Inc. ("**LSBPA**") (Case No. 11-12405 (KG)), Liberty State Financial Holdings Corp. ("**LSFHC**") (Case No. 11-12406 (KG)) and Liberty State Credit, Inc. ("**Credit**") (Case No. 11-13721 (KG)).

[2] Citations to the docket in this adversary proceeding shall be in the form "D.I. __," and citations to the docket in the main bankruptcy proceeding, Case No. 11-12404, shall be in the form "Main D.I. __."

[3] Capitalized terms used without definition shall have the meanings ascribed to them in the Trustee's Complaint (D.I. 1) (unredacted version filed under seal).

1

Thus, for example, Santander seeks a relatively-rare Rule 12(b)(6) dismissal based on *in pari delicto*, which is available only if established on the face of the complaint, by attempting to pin the alleged wrongdoing in the Complaint on alleged former control persons of the Debtors that the Complaint never mentions. Santander seeks dismissal of the Trustee's claim under New Jersey's RICO statute by repeatedly contending that Santander provided only "ordinary banking services" and maybe an occasional "improper" notarization, and at most failed to notice a few "red flags," disregarding the Complaint's detailed allegations of Santander's knowing, active participation in multiple schemes to loot the Debtors' assets. Santander's employees repeatedly violated federal law and Santander's own policies to facilitate its co-conspirators' theft and money laundering of the Debtors' funds. They repeatedly provided fraudulent notarizations of forged signatures and backdated documents to conceal a scheme to steal the Debtors' most valuable asset, falsely attesting under penalty of perjury that absentee signators had signed in their presence on dates months in the past. ▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌.[4] When Santander's fraud was finally exposed, its employees attempted to conceal their complicity by intentionally destroyed crucial evidence and testifying falsely before this Court and in the course of the Trustee's Rule 2004 investigation.

---

[4] Santander's refusal to implement an effective money-laundering program, is in and of itself, criminally sanctionable. *See* Declaration of Kellen G. Ressmeyer, sworn to on April 25, 2014 ("**Ressmeyer Dec.**"). Ex. A (Criminal Information in *United States v. HSBC Bank*, N.A., 1:12-cr-000763 (JG) (filed Dec. 20, 2012) (Dkt. 1) (charging HSBC for failure to implement and maintain an anti-money laundering program).

Such intentional misconduct embodies the knowing, substantial assistance to an unlawful scheme that is repeatedly upheld as actionable under New Jersey's RICO Act, N.J. STAT. ANN. § 2C:41-2, *et seq.*; its federal corollary, the Racketeering Influenced and Corrupt Practices Act, 18 U.S.C. § 1962(d); and New Jersey common law. Santander's Motion to Dismiss the Complaint for failure to state a claim should be denied.

<u>**COUNTER-STATEMENT OF FACTS**</u>

## I.    <u>THE COMPLAINT</u>

The Trustee's Complaint alleges Santander's complicity in the theft of the Ministrelli Trust and the Lacey Property; Michael Kwasnik's Ponzi Scheme; an earlier fraudulent scheme that involved the theft of the Debtors' funds (the "**Hope Now Fraud**"); and Santander's willful participation in the conspiracy to cover up the Ministrelli Theft. (D.I. 1) The Trustee asserts eleven causes of action in the Complaint: (a) racketeering under New Jersey's RICO Act, N.J. STAT. ANN. § 2C:41-2, *et seq.* ("**NJRICO**"), (b) conspiracy to violate RICO, 18 U.S.C. § 1962(d), (c) violation of New Jersey's Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, *et seq.* ("**NJ CFA**") (d) negligence, (e) aiding and abetting conversion, (f) aiding and abetting fraud, (g) two causes of action for aiding and abetting breach of fiduciary duty, (h) unjust enrichment, (i) failure to train and supervise employees, and (j) attorneys' fees pursuant to NJRICO and NJ CFA.

## II.    <u>**SANTANDER'S RELATIONSHIP WITH THE FRAUD-DOERS**</u>

As of 2009, Santander used a quarterly bonus program to reward its employees for successful transactions in bank products (the "**Bonus Program**"). Compl. ¶ 47. Santander's Bonus Program rewarded its employees with bonuses based on quarterly "sales," which included account openings, loans, mortgages, and time deposits. *Id.* The

Bonus Program created perverse incentives for Santander's employees to solicit, condone, facilitate and aid and abet their customers' fraudulent activity. *Id.* ¶ 48. Encouraged by Santander, its employees actively solicited the Non-Party Conspirators' business, meeting them at local social events, and monitoring their open houses and family trips. *Id* Santander's efforts succeeded, and the Non-Party conspirators became high-volume customers, using Santander bank accounts to steal and launder millions of dollars. *Id.* ¶ 49. At the height of the Non-Party Conspirators' fraud using Santander's accounts, Santander employees received bonuses exceeding 10% of their income. *Id.*

## III.  THEFT OF THE MINISTRELLI TRUST

In December 2009, a group of conspirators (the "**Ministrelli Conspirators**"), acting in concert with Santander, stole the Debtors' most valuable asset: a trust holding a life insurance policy of an elderly, wealthy individual, Joe Ministrelli, with a face value of $11.5 million (the "**Ministrelli Trust**") from its beneficial owner, Debtor LSBPA. Compl. ¶¶ 6, 56.[5] By the time of the Ministrelli Theft, none of these Conspirators had any ownership or employment relationship with any of the Debtors. *Id.* ¶ 1.[6]

The Ministrelli Conspirators purported to sell the Ministrelli Trust to an unrelated purchaser, Leo Group LLC and its affiliate, Tranen Capital Alternative Investment Fund, Ltd. (together, "**Leo/Tranen**"), by a fraudulent sale agreement bearing the forged

---

[5] The Ministrelli Conspirators were Anthony Faiola ("**AFaiola**"), Meghan Faiola ("**MFaiola**"), their company, Dillenschneider & Faiola Benefits & Insurance ("**D&F**"), and David Chalmers ("**Chalmers**"). Compl. ¶ 41.

[6] Going far outside the Complaint, Santander argues strenuously with this allegation, claiming that AFaiola was "a member of the Debtors' board of directors" (MTD 4). But Santander's only source for its argument, an adversary proceeding filed by the Trustee in October 2011 (prior to his substantial, nearly three-year Rule 2004 investigation), plainly states the Trustee's belief at the time (which AFaiola has subsequently denied) that AFaiola was a "*former*" director. *Barry v. Kwasnik, et al.*, Adv. Pro. No. 11-53420 (KG) (filed Oct. 17, 2011), Complaint ¶ 11 ("**Kwasnik Adv. Compl.**") (D.I. 1).

signature of LSBPA's CEO and Chairman, William Kwasnik, ("**WKwasnik**") for an

undervalued purchase price of $1.75 million. *Id.* ¶¶ 6, 80.[7] The Conspirators arranged to

have a portion of the purchase price paid to a Santander bank account purportedly held on

behalf of LSBPA, but which the Conspirators, in fact, controlled. *Id.* ¶¶ 1, 98-103. They

arranged to have the remainder of the purchase price paid directly to themselves via a

fraudulent "assignment." *Id.* ¶¶ 81. By April 2010, the entirety of the purchase price had

been stolen by the Ministrelli Conspirators. *Id.* ¶¶ 6, 89, 102.

A.    **Santander's False Notarizations**

Santander provided indispensable assistance to the Ministrelli conspiracy by

falsely notarizing, under penalties of perjury, five (5) forged and backdated documents

necessary to the Theft, including the fraudulent sale agreement itself. *Id.* ¶ 2.

1.    The Fraudulent Appointment of Chalmers as Successor Trustee

By the time of the Theft, the Debtors were embroiled in a lawsuit brought by their

secured lender, Westdale Construction, Ltd., to which the Ministrelli Trust was pledged

as security (the "**Westdale Lawsuit**"), and were barred from selling, transferring or

encumbering the Trust. *Id.* ¶¶ 59-60, 69. No one with knowledge of the lawsuit,

including MKwasnik, could participate in selling the Ministrelli Trust without risking a

contempt of court citation, or worse. *Id.* MKwasnik was the trustee of the Ministrelli

Trust, however, and any sale or transfer of the Trust required his signature. The

Ministrelli Conspirators therefore fabricated a series of forged, backdated, and notarized

documents to create the illusion that MKwasnik had resigned as trustee prior to receiving

notice of the Westdale Lawsuit, and that the sale of the Ministrelli Trust, purportedly on

---

[7] There is no evidence that Leo/Tranen was complicit in, or aware of, the Ministrelli Conspirators' Theft, or that Leo/Tranen knew that the sale of the Ministrelli Trust was not authorized by LSBPA.

behalf of Debtor LSBPA, was perpetrated by persons unaffiliated with the Debtors who had no knowledge of the Lawsuit. *Id.* ¶¶ 59-61, 69.

Thus, in November 2009, the Ministrelli Conspirators prepared multiple copies of an "Appointment of Successor Trustee," backdated to June 2009 (when the Westdale Lawsuit was commenced) and purportedly signed by MKwasnik, whereby MKwasnik purportedly resigned as trustee and appointed Chalmers in his stead. *Id.* ¶¶ 62-67. Chalmers had no affiliation with the Debtors and could plausibly claim (as he has) to be unaware of the Westdale Lawsuit. *Id.*

Expert handwriting analysis has demonstrated that MKwasnik's purported signatures on the appointment documents were not original but were made using a stamp. *Id.* ¶¶ 64-67. MKwasnik has denied ever signing the appointment documents or having had his signature notarized, and his cell phone records confirm that he was nowhere near Santander's bank branch in Westmont, New Jersey, on the dates he purportedly signed these appointments. *Id.* Yet, Santander's employees at Santander's Westmont branch, Kimberly Hicks-Finnerty ("**Finnerty**") and Edward Green ("**Green**") each notarized a copy of MKwasnik's purported appointment, falsely attesting under oath that MKwasnik had "personally appeared" before them on the dates indicated, provided satisfactory identification, and acknowledged his signature. *Id.*[8]

2.    The Fraudulent Sale of the Ministrelli Trust

About a month later, in December 2009, the Conspirators prepared the purchase and sale agreement, which was signed by Leo/Tranen, as purchaser; Chalmers, as trustee;

---

[8] While Santander dismisses as "implausible" its false notarizations as a proximate cause of the Theft (MTD 18), it never addresses the Complaint's detailed allegations that, particularly because of the Westdale Lawsuit, the Conspirators could not have proceeded with their scheme had Santander not been willing to notarize their forged and fraudulently backdated documents.

and, purportedly, by LSBPA's CEO, WKwasnik, as seller, on December 29, 2009. *Id.* ¶¶
80-84. But WKwasnik denies having signed the purchase agreement, and expert
handwriting analysis confirms that his purported signature was forged. *Id.* Moreover,
Santander's video surveillance footage shows that WKwasnik never entered the
Westmont branch on December 29, 2009—the date his purported signature was
notarized. *Id.* ¶¶ 82-84. Yet, Finnerty still notarized WKwasnik's purported signature,
falsely attesting under oath that WKwasnik had "personally appeared" before her on the
date indicated, provided satisfactory identification, and acknowledged his signature. *Id.*

### 3.    The Fraudulent Assignment Of The Sale Proceeds

███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████. *Id.* ¶¶ 72-75, 81, 86.[9] ███████████████
███████████████████████████████████████████████

████████████. *Id.* ¶ 89. But the Conspirators' plans were thrown into jeopardy on March
5, 2010, when, with the remainder of the purchaser price still unpaid, the court in the
Westdale Lawsuit issued an order removing MKwasnik as trustee of the Ministrelli Trust
and installing a new, independent trustee in his stead. *Id.* ¶¶ 95-97.[10] To ensure they
received the remainder of the purchase price, the Ministrelli Conspirators quickly

---

[9] Once again contradicting the Complaint's allegations, Santander disputes that this bank account was held
for LSBPA's benefit. MTD 37-38. █████████████████████████████████████████████████ Compl.
¶ 72. Moreover, the purchase agreement, which Santander notarized, required Leo/Tranen to pay the
purchase price to LSBPA by wiring the purchase price to a bank account designated by LSBPA. There
can be no question but what LSBPA was the purported beneficial owner of the Ministrelli Trust bank
account, and that Santander was on notice of that fact.

[10] The court had never been informed of MKwasnik's purported resignation and appointment of Chalmers
as successor trustee or, of course, the unauthorized sale of the Ministrelli Trust to Leo/Tranen. *Id.* ¶ 96.

prepared a written "notice of assignment" from Chalmers to Leo/Tranen, claiming that the Ministrelli Trust had "assigned the receivable" of the remaining purchase price to D&F, and instructing Leo/Tranen to wire the remaining purchase price directly into D&F's Santander account. *Id.* ¶¶ 98-100. The Conspirators backdated this notice of assignment to February 10, 2010, to create the appearance that it had been issued before the court order appointing the new trustee. *Id.* ¶ 100.

Once again, Santander's willingness to provide false notarizations proved integral to the Ministrelli Conspirators' scheme. After Leo/Tranen insisted that the notice of assignment be notarized, Finnerty and Green each notarized a copy, falsely certifying that Chalmers had "personally appeared" before him or her on February 10, 2010, provided identification, and acknowledged his signature. *Id.* ¶ 101. ██████████████

██████████████████████████ *Id.* ¶ 102. By the end of April 2010, the Ministrelli Conspirators had absconded with the amount of the purchase price. *Id.* ¶¶ 6, 89, 102.

### B.    Santander's Unlawful Account Openings

Santander also facilitated the Ministrelli Theft by permitting the Conspirators to open and use several bank accounts to launder the funds from the purchase price. In doing so, Santander violated "know your customer" and other anti-money-laundering procedures required by federal law, as well as Santander's own policies, which, had they been followed, would have foiled the Conspirators' scheme. *Id.* ¶¶ 70-77.

Most critically, in November 2009, Santander unlawfully permitted Chalmers to open a new account as trustee for LSBPA's Ministrelli Trust, which was necessary to ensure the Conspirators' control of the account into which the purchase price was wired a month later. *Id.* ¶¶ 72-75. Before opening a trust account, Santander's employees were

8

required to review the trust operating agreement to ensure the account was in compliance, and Santander's records indicate that the Westmont branch manager did indeed review the Ministrelli Trust agreement. *Id.* ¶ 72. Chalmers was plainly unqualified to serve as trustee under the express terms of the agreement (which required either an institutional trustee or an attorney) and, moreover, his appointment required LSBPA's express, written approval, which was not obtained. *Id.* Under Santander's own policies, Chalmers should not have been permitted to hold an account with signatory authority for the Trust. *Id.* Had he not been, the Ministrelli Conspirators could not have stolen the purchase price from the sale of the Trust. *Id.* ¶ 69.



*Id.* ¶¶ 77, 86-94.

*Id.* ¶¶ 71, 76-77.

**C.    Santander's Knowledge of the Conspirators' Money Laundering**

. *Id.* ¶ 90.



███████████████ . *Id.* ¶¶ 88, 94.

## IV.  SANTANDER'S COVER-UP OF ITS COMPLICITY IN THE MINISTRELLI THEFT

Once the Ministrelli Theft was discovered by the Debtors, Santander's employees

conspired to cover up Santander's complicity in the Theft, intentionally destroying

crucial evidence and, during the course of the Debtors' bankruptcy proceedings,

providing materially false testimony regarding the Theft in a hearing before this Court

and in the ███████████████ (the "**Rules**"). *Id.* ¶¶ 18-19, 109-114.

Santander's role in the Ministrelli Theft was exposed on June 21, 2010, when

WKwasnik stormed into Santander's Westmont branch and accused Finnerty of having

notarized his forged signature on the agreement purporting to sell the Ministrelli Trust.

*Id.* ¶¶ 18, 112. ███████████████

███████████████

███████████████

███████████████

███████████████ . *Id.* Thus, the log books would likely

have provided proof of the Ministrelli Conspirators' fraud, and Santander's collusion in

it, because they would have reflected the actual date on which deceptively backdated

documents were notarized (or else the entries would have been positioned in the book

out-of-sequence), and would likely have reflected either that the purported signatories did

not personally appear, or would have failed to record correct identifying information for such signatories. *Id.* ¶¶ 18, 109-10.

Having disposed of the evidence, Finnerty and Green both testified adamantly during the Trustee's Rule 2004 depositions that ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████. *Id.* ¶¶ 19, 68, 103, 112. ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████. *Id.* ¶¶ 110-12.[11] Finnerty also testified falsely in an evidentiary hearing before this Court in December 2011 to determine, on Leo/Tranen's motion, whether WKwasnik's signature was a forgery as the Trustee contended. Main D.I. 318 at 26-59. As a direct result of Finnerty's false testimony, the Trustee was unable to prove that WKwasnik's signature was forged and was forced to compromise his claim against Leo/Tranen for less than 20% of the minimum value of the Ministrelli Trust. *See* Kwasnik Adv. Pro., D.I. 86 at 2, 4 ¶ 2 (settling for $350,000).

Finally, in late 2012 or early 2013, long after it was on notice of the Trustee's claim and after its counsel had appeared in these bankruptcy cases, Santander purged all its emails pre-dating December 2009 while migrating to a new email archive system. *Id.* ¶¶ 113-14. Santander admitted that at the time of the purge, it had not implemented a

---

[11]The Trustee is well aware of the seriousness of these allegations and makes them only because the objective evidence, as described above, permits no other reasonable conclusion. In light of this evidence, Santander's charge that the Trustee has charged its employees with "perjury" based solely on a "hunch" in disregard of FED. R. CIV. P. 11 (MTD 18) is, to say the least, rhetorically excessive.

litigation hold concerning the Ministrelli Theft or Ponzi Scheme. *Id.*

## V.   **"HOPE NOW" FRAUD**

In 2009, Santander colluded with MKwasnik and his law firm, KRKB, to perpetrate a fraudulent loan modification scheme to steal funds from financially desperate customers seeking to renegotiate their mortgages. *Id.* ¶ 13.  Deceptively adopting the same name as the federal government's similarly named "Hope Now Alliance," MKwasnik, KRKB and these loan modification companies (the **"Hope Now Conspirators"**) solicited hundreds of consumers with troubled mortgages, misrepresenting themselves as a "powerful ally" affiliated with the federal government and promising to renegotiate the customers' mortgages with their lenders in exchange for an up-front fee. *Id.*  However, the Hope Now Conspirators absconded with their victims' up-front fees, never providing the promised services. *Id.*

Santander had actual knowledge of the illegal activity in MKwasnik's Hope Now accounts, but did nothing to prevent it.  As Santander knew, the Federal Trade Commission (**"FTC"**) commenced proceedings against Hope Now for fraud in March 2009. *Id.* ¶¶ 135-38. ███████████████████████

██████████████████████. *Id.* ¶¶ 127-133. ████████████

██████████████████. *Id.* ¶ 140.

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████ *Id.* ¶ 15. ████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████. *Id.*

During the course of the Hope Now Scheme, MKwasnik stole at least $237,000 from the Debtors' accounts and deposited those funds into his Hope Now account at Santander. *Id.* ¶¶ 14, 125.[12]

## VI. **MKWASNIK PONZI SCHEME**

From at least 2008 through 2011, Santander colluded with MKwasnik and his co-conspirators in his scheme to defraud the Debtors in connection with their debt offerings. MKwasnik purchased over $13 million of the Debtors' notes on behalf of his clients, many of whom were elderly or disabled annuity holders or trust beneficiaries or grantors. *Id.* ¶¶ 10, 142-58. He then stole or misapplied the proceeds rather than remitting them to the Debtors. *Id.* ¶¶ 10, 142-158. As a result, the Debtors were left with over $13 million in liabilities owed to their noteholders, but none of the proceeds from the offerings. *Id.*

To facilitate and conceal his scheme, MKwasnik and his co-conspirators repeatedly laundered money between and among accounts they held at Santander, as well as an account held by one of his victims. *Id.* ¶¶ 2, 150-52 & n.10-12, 153 & n.9, 185(e)).[13] Like the Hope Now Scheme, the Ponzi Scheme raised inordinate numbers of fraud, money laundering and suspicious activity alerts at Santander, of which Santander's employees were actively aware, but chose to ignore. *Id.* ¶ 11.

████████████████████████████████

---

[12] Santander contends that this theft from the Debtors occurred *after* the Hope Now Scheme ended (emphasis Santander's) (MTD 11), but that contention is inconsistent with the facts pled in the Complaint.

[13] Santander incorrectly contends that its alleged role in the Ponzi Scheme concerns only a single account held in the name of one of the Ponzi Scheme's victims (the "Kopacz Trust Account") (MTD 6-7), disregarding the Complaint's allegations that MKwasnik also used accounts held by himself and his law firm to launder money in connection with his scheme. Compl. ¶ 142.

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████

## VII.   THEFT OF THE LACEY PROPERTY

Santander also facilitated the theft of real property owned by LSBPA, known as

the "**Lacey Property.**" *Id.* ¶¶ 16, 159-63.  In February 2010, this was transferred for no

apparent consideration to MFaiola by a deed purportedly executed by WKwasnik.  *Id.* ¶¶

161, 163.  MFaiola resold the Lacey Property two months later.  Sovereign provided the

financing via a mortgage for this sale, yet failed to conduct any due diligence to

determine that the Property had been transferred for no consideration. *Id.* Moreover, the

deed and other documents effectuating the fraudulent sale were notarized by the same

two Sovereign notaries that fraudulently notarized the forged signatures effectuating the

theft of the Ministrelli Trust. *Id.* ¶¶ 16, 161.

## ARGUMENT

## I.   STANDARDS ON A MOTION TO DISMISS

In reviewing a motion to dismiss under rule 12 (b)(6) of the Federal Rules of Civil

Procedure (the "**Federal Rules**"), the Court must "accept as true all allegations in the

[complaint] and draw all reasonable inferences in a light most favorable to the plaintiff."

*See In re Direct Response Media, Inc.*, 466 B.R. 626, 637 (Bankr. D. Del. 2012) (Gross,

J.) (citation omitted and emphasis added).  A complaint is sufficiently pleaded so long as

the factual allegations "raise a right to relief above the speculative level" and cross "the

line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570

(2007). The sole issue under Rule 12(b)(6) is whether the Trustee will ultimately "be 'entitled to offer evidence to support the claims,' and 'not whether [he] will ultimately prevail.'" *Direct Response*, 466 B.R. at 637; *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 534 (S.D.N.Y. 2002) (plaintiffs, who were former asbestos defendants, adequately pled RICO claim against asbestos law firm that had falsified client affidavits in order to meet court deadlines). "This is true even if 'actual proof of those facts is improbable' and 'a recovery is very remote and unlikely.'" *Direct Response*, 466 B.R. at 637 (citation omitted).

Santander's Dismissal Motion repeatedly violates these principles, contradicting the Complaint's allegations with references to deposition testimony, third-party affidavits, the Trustee's pleadings in other proceedings, Santander's own internal documents and other facts that appear nowhere in the Complaint. Indeed, fully *one-third* of Santander's statement of facts consists of such impermissible citations. But contrary to Santander's overly-expansive view of the scope of judicial notice (MTD 24), the Trustee's allegations in this Complaint cannot be contradicted by reference to pleadings in other cases—even his own.[14] A court's judicial notice of prior court filings only extends to the existence and authenticity of those proceedings—not the truth of the underlying factual matters asserted therein. *See Brody v. Hankin*, 145 Fed. Appx. 768 (3d Cir. 2005) (district court's reliance on facts from documents in related arbitration proceeding, but not mentioned in or attached to the Complaint, was reversible error); *In re Hechinger Investment Co. of Del., Inc.*, 282 B.R. 149 (D. Del. 2002) (refusing to "bear

---

[14]Indeed, a court may not consider the plaintiff's prior pleadings even in the same case on a motion to dismiss. *See Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18, 23 (2d Cir. 2012) (Where an amended pleading is at issue, the Court may not consider allegations in the original pleading in deciding the Rule 12(b)(6) motion).

in mind" arguments and objections made in prior motions on Rule 12(b)(6) motion);

*Hinton v. Dep't of Justice*, 833 F.2d 126, 130 n.1 (3d Cir. 1988) (affidavits pertaining to

disputed facts are not appropriate for judicial notice).[15]

Finally, to the extent the Trustee is required to plead fraud with particularity under

Federal Rule 9(b), he is entitled to application of the "relaxed" fraud-pleading standard

applicable to trustees in bankruptcy. *Miller v. Greenwich Capital Financial Prods., Inc.*

(*In re Am. Bus. Fin. Servs., Inc.*), 361 B.R. 747, 753 (Bankr D. Del. 2007). Such a

relaxed standard is particularly appropriate here, where the Trustee's Rule 2004

investigation has been significantly impaired by Santander's spoliation of large quantities

of material evidence. *See* Compl. ¶¶ 19, 109-114.

## II.  THE DOCTRINE OF IN PARI DELICTO DOES NOT BAR THE TRUSTEE'S CLAIMS

### A.  Santander's *In Pari Delicto* Defense is Premature

Santander's argument for dismissal based on its affirmative defense of *in pari*

*delicto* fails on multiple grounds, the most obvious of which is that it relies on asserted

facts found nowhere in the Complaint.[16] *In pari delicto* may only be considered on a

Rule 12(b)(6) motion to dismiss if it is established on the face of the Complaint. *Brody v.*

*Hankin*, 145 Fed. Appx. 768 (3d Cir. 2005); *Stanziale v. McGladrey & Pullen LLP* (*In re*

*Student Fin. Corp.*), 2006 WL 2346373, at *3 (D. Del. Aug. 10, 2006) (denying motion

to dismiss because *in pari delicto* was not apparent from the face of the complaint);

---

[15]Santander's reliance on *Evergreen Solar, Inc. v. Barclays, PLC* (*In re Lehman Bros., Inc.*), 2011 WL 722582 (S.D.N.Y. Feb. 22, 2011), *and In re Federal-Mogul Global Inc.*, 2007 WL 4180545 (Bankr. D. Del. Nov. 16, 2007) (MTD 4 n.4) is misplaced, because in both cases the Court took notice only of facts that were truly undisputed.

[16] The doctrine of *in pari delicto* dictates that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing. *Thabault v. Chait*, 541 F.3d 512, 522 n.10 (3d Cir. 2008) (refusing to apply *in pari delicto* to bar claims).

*Stanziale*, 2006 WL 2346373 (same); *Adelphia Comm'n Corp. v. Bank of America* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 56-57 (Bankr. S.D.N.Y. 2007) (*in pari delicto* defense was "incapable of resolution on motion [to dismiss]").[17]

The Complaint does not allege any wrongdoing committed by any of the Debtors' officers or directors—let alone all of them.[18]  To the contrary, it specifically alleges that none of the wrongdoers named in the Complaint "held any position with any of the Debtors, either as an employee, officer, or director" at the time of the alleged wrongdoing. Compl. ¶ 1.  The Complaint also alleges, based on minutes of the Debtors' Board meetings, that the Debtors' Board was not informed of, and did not authorize, any sale of the Ministrelli Trust.  *Id.* ¶ 79.

**B.    The Trustee's Counter-Defenses To *In Pari Delicto* Also Render Its Application Inappropriate At This Stage**

Just as the Complaint does not plead facts establishing *in pari delicto*, neither does it belabor the facts that would refute it.  But if and when the defense is properly raised, the Trustee will have several formidable counter-defenses, the existence of which provides an additional reason why resolution of the defense at this stage is premature.

---

[17]Santander cites only four cases granting dismissal at the pleading stage based on *in pari delicto*, and in each of those cases, the complaint pled explicitly that the *entire* ownership and management of the debtors had participated in wrongdoing.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001) (Complaint pled that the debtors' sole shareholders and principals perpetrated the ponzi scheme); *Picard v. JPMorgan Chase Bank & Co.* (*In re Bernard L. Madoff Inv. Secs. LLC*), 721 F.3d 54, 63 (2d Cir. 2013) (complaint alleged that Madoff operated a ponzi scheme through his company); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 512-13 (D. Del. 2012) ("the Complaint alleges that the entire DBSI structure was fraudulent and that DBSI became 'nothing more than' an elaborate ponzi scheme to defraud investors.  This scheme encompassed all of the DBSI entities, which allegedly operated as a single enterprise."); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149, 1155 (11th Cir. 2006) (Complaint alleged that bankrupt corporation was the "hub" and sole shareholder committed the wrongdoing).

[18]As Santander concedes, MKwasnik was neither a shareholder, director nor officer of the Debtors at the time of the alleged wrongdoing.  (MTD 1 (MKwasnik was the Debtors' "founder and general counsel")).  Thus, the extent, if any, to which his wrongdoing can be imputed to the Debtors for purposes of *in pari delicto* is certainly not capable of resolution on a motion to dismiss.

Specifically, without limitation, two of these defenses are outlined below.

   1.  The Alleged Wrongdoing Was
      Completely Adverse To The Debtors' Interests

   The application of *in pari delicto* is barred by the "adverse interest exception,"

which precludes imputation of an agent's wrongdoing to the principal if such wrongdoing

was inimical to the principal's interests. *See Forman v. Salzano (In re Norvergence,*

*Inc.)*, 405 B.R. 709, 748 (D.N.J. 2009) ("the wrongful conduct of the individual corporate

officers and directors can be imputed to the corporation only if the conduct was

committed (1) in the course of the officer or director's employment, and (2) for the

benefit of the corporation" (internal brackets and quotation marks omitted)).  The

schemes alleged in the Complaint all involve simple theft of the Debtors' assets, none of

which could plausibly be viewed as in the Debtors' interests.  Such looting of the

Debtors' assets is a "classic" example of "adverse" conduct not subject to *in pari delicto.*

*See Baena v. KPMG LLP*, 453 F.3d 1, 8 (1st Cir. 2006); *Official Committee of Unsecured*

*Creditors of Allegheny Health, Ed. and Res. Found. v. PricewaterhouseCoopers*, 607

F.3d 346, 353 (3d Cir. 2010) ("When the third party and an agent collude against the

corporation, the conduct is transparently unsanctioned."); *Bondi v. Bank of Am. (In re*

*Parmalat)*, 383 F. Supp. 2d 587, 599 (S.D.N.Y. 2005) (looting of company funds is not

"in any sense in the interest of the company"); *Unencumbered Assets Trust v. J.P.*

*Morgan Bank (In re Nat 7 Century Fin. Enters.)*, 617 F. Supp. 2d 700, 717 (S.D. Ohio

May 11, 2009) (same); *Drabkin v. L&L Const. Assoc.*, 168 B.R. 1, 6 (Bankr. D.D.C.

1993).[19]

---

[19]There should be no dispute that the Ministrelli Theft, Lacey Theft, and Hope Now Scheme (which
 MKwasnik did not operate through the Debtors, but merely stole their funds to facilitate) were adverse to

2.    The Pre-Filing Appointment of A
      Fiscal Agent "Cleansed" the Debtors

Regardless of any wrongdoing by the Debtor's former principals, the New Jersey

Superior Court's pre-bankruptcy appointment of a Fiscal Agent, which ousted the

Debtors' former management from control of the companies, prevents application of *in

pari delicto* against the Trustee's claims.  *See Kirschner v. Wachovia Capital Mkts., LLC

(In re Le-Nature's Inc.)*, 2009 WL 3571331 (W.D. Pa. Sept.16, 2009) (appointment of

custodian days prior to bankruptcy filing "essentially rid [the Debtor] of corrupt influence

of certain corporate officers prior to the bankruptcy filing"); *In re Edgewater Med. Ctr.*,

332 B.R. 166, 177 (Bankr. N.D. Ill. 2005) ("The appointment of a receiver alters the

defenses to which a corporation is subject by removing the wrongdoer from the scene for

purposes of in pari *delicto*."); *In re E.S. Bankest, L.C.*, 2010 WL 2926203, at *2 (S.D.

Fla. Bankr. July 23, 2010) ("Because the Receiver was appointed and took over

[company] *before* the filing of the bankruptcy case, . . . the company 'was not being run

by the wrongdoers who allegedly engaged in fraud,' and 'there is no fraud to

impute.'").[20]

In a securities enforcement action brought against two of the Debtors, LSBPA and

LSFHC, by the New Jersey Bureau of Securities, *Dow v. Liberty State Fin. Holdings*

---

the Debtors' interests.  The Ponzi Scheme could present a closer question, were it alleged (as it is not) that funds raised through the scheme were used for the Debtors' benefit.  But the Complaint alleges instead that "[r]ather than transmitting the funds raised through these debt offerings to the Debtors, MKwasnik either stole them outright or misappropriated them to pay his earlier investors," Compl. ¶ 144, and that the result of the scheme was that the Debtors were "saddled with debt from the issuance of their notes" while being deprived of the proceeds, *id.* ¶ 142.  These allegations plainly support application of the adverse interest exception to the Ponzi Scheme as well.

[20] *See also Lafferty*, 267 F.3d at 358 (recognizing that "receivers are not subject to the limits of section 541); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (refusing to apply *in pari delicto* to bar receiver); *F.D.I.C. v. O'Melveny & Myers*, 51 F.3d 17, 19 (9th Cir. 1995) ("defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver."); *DeNune v. Consol. Capital of N. Am.*, 288 F. Supp. 2d 844, 851 (N.D. Ohio 2003) (same).

*Corp.*, C 59-11 (filed Mar. 16, 2011) ¶ 3 (Klein J.), the court appointed a Fiscal Agent

with the full powers of a receiver three months before the Debtors filed their petitions in

this Court. *See* Main D.I. 29-6 at 9-20.[21] Thus, "[b]ecause [the Fiscal Agent] was

appointed before the filing of the bankruptcy case, and because the [trustee] stepped into

the shoes of [the Debtors] which w[ere] then being run by this [Fiscal Agent] who was

not engaged in any sort of fraudulent conduct, there is no fraud to impute to the

[trustee]." *Le-Nature's*, 2009 WL 3571331, at *6

## III.   <u>THE COMPLAINT ESTABLISHES CLAIMS UNDER NJRICO</u>

Under the NJRICO statute, it is "unlawful for any person [to] receive[ ] any

income derived, directly or indirectly, from a pattern of racketeering activity . . . [and] to

use or invest, directly or indirectly, any part of the income, or the proceeds of the income,

in acquisition of any interest in, or the establishment or operation of any enterprise which

is engaged in or the activities of which affect trade or commerce." N.J. Stat. Ann. §

2C:41-2.  A plaintiff must establish "five elements in a substantive [New Jersey] RICO

offense: (1) the existence of an enterprise; (2) that the enterprise engaged in or its

activities affected trade or commerce; (3) that defendant was employed by, or associated

with the enterprise; (4) that he or she participated in the conduct of the affairs of the

enterprise; and (5) that he or she participated through a pattern of racketeering activity."

*State v. Ball*, 141 N.J. 142, 181 (N.J. 1995).

Santander's lengthy argument for dismissal of the Trustee's claims under

---

[21]The Order provided that:

> The Fiscal Agent shall be vested with the full powers to perform his
> duties, including the powers delineated in N.J.S.A. 49:3-69(c) and (d)
> and Title 14A of the New Jersey Statutes, Corporation, General . . . .

These New Jersey statutes cited in the Order set forth the powers of receivers under New Jersey law.

NJRICO (MTD 16-33) is based almost entirely on cases applying federal RICO.[22] But

"NJRICO is broader in scope than the federal RICO statute." *Ford Motor Co. v.*

*Edgewood Props.*, 2012 WL 4172133, at *27 (D.N.J. Aug. 31, 2012) (denying summary

judgment in NJRICO action (citing *State v. Ball* (*Ball I*), 268 N.J. Super. 72 (N.J. App.

Div. 1993))). "New Jersey courts take a liberal stance in permitting plaintiffs to plead

NJRICO violations, rejecting the narrow construction of the federal statute that many

circuits, including [the Third Circuit], have adopted." *Id.* As discussed below, the

Complaint adequately pleads each of the required elements under NJRICO.

### A.    The Complaint Adequately Alleges Causation

#### 1.    Santander Ignores the Complaint's Actual Allegations

To support its argument that the Complaint fails to plead proximate causation,

Santander baldly re-writes the Complaint to inculpate other, unnamed persons while

omitting virtually all the Complaint's allegations regarding Santander's culpability. In

denying responsibility for the Ministrelli Theft, for example, Santander remarks:

> [I]t is implausible, bordering on frivolous, to suggest that
> *an* alleged improper notarization was the direct, substantial
> cause of the Debtors alleged injury from the sale of the
> Ministrelli Trust, and that the direct, substantial cause was
> the malfeasance of the Debtors' principals M. Kwasnik, W.
> Kwasnik, Erhard and Duffy [none of whom are named in
> the Complaint as Ministrelli Conspirators], along with A.
> Faiola, M. Faiola and Chalmers.    MTD 18 (internal
> quotation marks omitted and emphasis added).

---

[22]In its entire discussion of causation, Santander cites only three cases applying NJRICO, and two of those cases apply the criminal NJRICO statute, which is itself more restrictive than its civil counterpart. *See Failla v. City of Passaic*, 146 F.3d 149, 156-157 (3d Cir. 1998) ("shared intent" requirement under criminal NJRICO does not apply to civil NJRICO context). In the only case applying civil NJRICO that Santander cites, *Interchange State Bank v. Veglia*, 668 A.2d 465 (N.J. Ct. App. Dec. 26, 1995), the court held that a bank that was found liable for honoring fraudulent checks could not bring a RICO action against the makers, since the bank was not an intended victim of their conspiracy. Santander cannot deny that the Debtors were the intended victims of the alleged conspiracies to steal their assets.

This meaningless observation bears no relationship to the actual Complaint, omitting, for example, the Complaints' allegations that Santander falsely notarized *five (5)* forged or backdated documents, each of which was necessary to the Ministrelli Conspirators' scheme to evade the proceedings in the Westdale Lawsuit, (¶ 3, 59-69, 83-84, 100-104); waived account opening requirements for accounts used to facilitate the Theft (¶¶ 152 & n. 13, 185(e)); actively monitored the fraudulent wire transfers relating to the Ministrelli Theft (*id.* ¶ 88); and engaged in cover-up of the Theft by destroying documents and giving false testimony (¶¶ 19, 109-14). In addition to proximately causing the theft of the Debtors' assets, Santander's destruction of evidence (id. ¶¶ 18, 112, 114), and false testimony throughout the Trustee's Rule 2004 investigation (id. ¶ 19), directly damaged the Debtors' estates by forcing the Trustee to settle with Leo/Tranen at an artificially low sum as well as incur additional costs of investigation and legal action. *Desmond v. Siegel*, 2012 WL 3228681, at *7 (D.N.J. Aug. 6, 2012) ("Costs associated with remediating or taking legal action against RICO conduct amount to an 'out-of-pocket loss' that is actionable under RICO.")

Santander's dual contentions that only the "defrauded investors who purchased the Debtors' worthless notes, not the Debtors, [] were injured by [MKwasnik's] Ponzi Scheme" (MTD 18), and that "the injury resulting from the 'Hope Now' Mortgage Fraud Scheme was to the defrauded residential mortgagors, not to the Debtors" (MTD 19) both presupposes the same false premise that a fraud can have only one victim. The Complaint alleges that MKwasnik stole or misapplied the proceeds from the Debtors' notes, thus saddling them with all the burdens, and none of the benefits, of the additional debt, and that he stole the Debtors' funds to facilitate the Hope Now Fraud. *See* ¶¶ 10,

22

20, 125. ████████████████████████████████

████████████████████████████████████████

████████ *Id.* ¶ 127 n.9. Those allegations plainly allege a direct injury to the Debtors

sufficient to establish proximate causation.

### 2.    Proximate Causation Is Question For The Factfinder

Even apart from Santander's inability to address the Complaint's actual

allegations, dismissal for proximate causation on a dispositive motion is highly

disfavored. "Ordinarily, issues of proximate cause are considered jury questions." *Reyes*

*v. Egner*, 404 N.J. Super. 433, 467 (N.J. App. Ct. 2009) (citing *Beadling v. William*

*Bowman Assocs.*, 355 N.J. Super. 70, 87 (N.J. App. Div. 2002) ("questions of proximate

cause are left to the jury for its factual determination.")); *Roth v. Marina Assocs.*, 2009

WL 2496803, at *8 (D.N.J. Aug. 11, 2009) (same); *Prudential Ins. Co. of Am. v. U.S.*

*Gypsum Co.*, 828 F. Supp. 287 (D.N.J. 1993) (presence of proximate cause is "for the

jury to decide" (denying summary judgment on RICO claim). Santander presents no

"extraordinary consequences" to justify departure from this rule. *See Reyes*, 404 N.J.

Super. at 467 (denying summary judgment on proximate cause issue because there were

no "extraordinary consequences" warranting departure from general rule).

### 3.    The Trustee Is Not Required to Establish That Santander's Conduct By Itself Caused the Debtors' Injuries

New Jersey law does not require the Trustee to establish that Santander's conduct,

standing alone, was the principal or proximate cause of the Debtors' losses. Santander

need only have substantially assisted the unlawful conduct of others—here, the Non-

Party Conspirators—to the detriment of the Debtors. *See Cowher v. Carson & Roberts*,

425 N.J. Super. 285, 303 (N.J. Sup. Ct. Apr. 18, 2012) ("***the party whom the defendant***

*aids* must perform a wrongful act that causes an injury" (emphasis added)).

Santander does not dispute that the Non-Party Conspirators perpetrated a massive fraud upon the Debtors, proximately causing millions of dollars of losses. *See* MTD 15-17, 18 (the Debtors' injuries were caused by "those alleged fraudsters"). Santander's substantial assistance to their schemes (*see* Section VII, *infra*) creates the requisite proximate cause to the Trustee's NJRICO claims.

### B.   Santander Concedes That The Complaint Alleges Conduct Cognizable As A NJRICO "Enterprise"

The Complaint also adequately pleads an "enterprise" under NJRICO, as Santander unwittingly concedes. Santander misreads New Jersey precedents as requiring that an "enterprise" must be more than the sum of the alleged 'racketeering activity,' while admitting that the Complaint alleges at least that much. *See* MTD 20. To the contrary, as the District of New Jersey recently held, the "enterprise" element, which "New Jersey broadly construes . . . unlike the federal statutory counterpart," is satisfied precisely if it is "no more than the sum of the racketeering acts":

> The New Jersey Supreme Court has held that the "'enterprise' element will be satisfied if there exists a group of people, no matter how loosely associated, whose existence or association provides or implements the common purpose of committing two or more predicate acts." *State v. Ball*, 141 N.J. 142, 160. ***The element is also satisfied if the enterprise "is no more than the sum of the racketeering acts." Id.*** Therefore, the "'enterprise' does not have to be an organization whose purpose is greater than the predicate acts, nor does it have to evidence any definable structure." *Id.*

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, 2013 WL 1431680, at *10 (D.N.J. Apr. 9, 2013) (denying motion to dismiss NJRICO claims) (emphasis added)); *Ball I*, 268 N.J. Super. at 144; *Ford Motor Co. v. Edgewood Props.*, 2009 WL 150951, at *11

(D.N.J. Jan. 20, 2009) (same); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460

(D.N.J. 1998); *Accord Franklin Medical Assocs. v. Newark Pub. Sch.*, 362 N.J. Super.

494, 513 (N.J. Ct. App. 2003) (enterprise exists "if there exists a group of people, no

matter how loosely associated, whose existence or association provides or implements the

common purpose of committing two or more predicate acts.").[23]

 Moreover, Santander ignores entirely paragraph 176 of the Complaint, which

details for two pages the various members of the alleged enterprise and their discrete,

well-defined roles in the conspiracy.  These allegations are far more than required to

plead the existence of a conspiracy under NJRICO.  *Guidotti v. Legal Helpers Debt*

*Resolution, LLC*, 866 F. Supp. 2d 315, 341 (D.N.J. 2011) (allegations that defendant was

"associate with" and "participated in" an enterprise through a pattern of racketeering

activity satisfied "enterprise" element).

  **C.** **The Complaint Adequately Alleges**
   **Santander's Purposeful Participation in the Enterprise**

 The Complaint adequately alleges Santander's "participation" in the enterprise,

which is "acting purposefully and knowingly in the affairs of the enterprise in the sense

of engaging in activities that seek to further, assist or help effectuate the goals of the

enterprise." *Prudential*, 2013 WL 1431680 at *11 (internal quotations omitted).  At the

pleading stage, the Trustee need only allege conduct raising a plausible inference of

scienter. *See In re Midlantic Corp. Shareholder Litig.*, 758 F. Supp. 226, 232 (D.N.J.

1990) (on a Rule 12(b)(6) motion, "defendant['s] argument that plaintiff['s] assertion of

---

[23]Defendants misread the New Jersey Supreme Court's decision in *Ball v. State*, asserting that "mere allegations of racketeering activity are insufficient to prove the existence of the 'enterprise.'" *See* MTD 20-21 (citing *Ball II*). *Ball II* explicitly affirmed the Appellate Division's holding in *Ball v. State, see Ball*, at 160, 189, clarifying that "evidence that serves to establish such an enterprise need not be distinct or different from the proof that establishes the pattern of racketeering activity." 141 N.J. at 162.).

scienter is overly conclusory and thus not actionable is specious."). "[M]ere allegations of knowledge and participation [a]re sufficient for this Court to continue forward." *Hill v. Equitable Bank*, 655 F. Supp. 631 (D. Del. 1987).

███████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████    *See* Compl.¶ 185(a)-(d)). *Midlantic Corp.*, 758 F. Supp. at 232 (untrue statements are made knowingly and recklessly established scienter); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) ("defendants' knowledge of acts or access to information contradicting their public statements" establishes scienter); *Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264 (D.N.J. 1990) (allegation that "[defendant] had actual knowledge or in reckless disregard of the facts should have known" sufficient for scienter in 10b-5 case").

Santander also willfully disregarded obvious signs that its financial services were being used for criminal purposes, in violation of federal and state banking laws. Compl. ¶¶ 11, 15, 140, 155. *In re Tyco Int'l Ltd.*, 2007 WL 7687755, at *23 (D.N.H. June 11, 2007) (employer's failure to take preventative measure or remedy fraud warranted employer liability under NJRICO); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 66 F. Supp. 2d 622, 631 (E.D. Pa. 1999) (defendant's deviation from internal procedures in a way that violated national accounting standards constitutes evidence of scienter); Ressmeyer Dec. Ex. B (deferred prosecution agreement in *United States v. MoneyGram Int'l, Ltd.*, Cr. No. 1:12-291 (M.D. Pa. Nov. 9, 2012), requiring forfeiture of $100 million

for willful disregard of obvious signs that its money transfer network was being used by fraudulent telemarketers and other con-artists, including its own money transfer agents.).

Perhaps most egregiously, Santander participated in a three-year cover-up effort of the Ministrelli Theft, including the intentional destruction of key evidence, false testimony in these proceedings, and further destruction of countless emails during the crucial months leading to the Theft. Compl. ¶¶ 17-18, 109-112, 185(h). Such conduct is "strong proof" of scienter. *In re Nature's Sunshine Prods. Sec. Litig.,* 486 F. Supp. 2d 1301, 1310 (D. Utah 2008) ("Evidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter"); *U.S. v. PECO Energy*, 897 F. Supp. 2d 300 (E.D. Pa. 2012) (Complaint alleging that defendants' were involved in a cover-up sufficiently alleged scienter); *In re NUI Sec. Litig.*, 314 F. Supp. 2d 388, 399 (D.N.J. 2004) (scienter satisfied upon stating facts giving rise to "a strong inference of . . . deliberate illegal behavior"); *Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793, 800 (3d Cir. 1978) ("general awareness that [their] role was part of an overall activity that is improper" supported jury verdict of aiding and abetting against Bank).[24]

      1.      Santander Is Vicariously Liable for
                  Its Employees' Improper Notarizations

Santander's contention that it is not liable for Finnerty's and Green's fraudulent notarizations (MTD 23-24) is unsupportable. *Comm'l Union Ins. Co. v. Burt Thomas-Aitken Constr. Co.*, 49 N.J. 389, 391-95 (N.J. 1967), which Santander cites as rejecting a

---

[24]The Complaint also alleges that Santander's employees were motivated by large sales bonuses to collude with the Non-Party Conspirators in a racketeering enterprise. Compl. ¶¶ 4, 47-55, 76-77, 88, 121, 176(b)), 185(e), 196(a), 240(a)). Financial incentives to collude with the Non-Party Conspirators "bolsters the inference of scienter." *Local 731 I.B. of T. Excavators and Pavers Pension Trust v. Swanson*, 2011 WL 2444675 (D. Del. June 14, 2011) ("[A]n allegation of 'personal financial gain may weigh heavily in favor of a scienter inference.'" (citation omitted) (denying motion to dismiss).

bank's vicarious liability "for a notary employee's breach of duty when the bank has *no role* in the underlying transaction," is inapplicable on its face. Santander had a substantial role in the transactions leading to the Ministrelli Theft: ███████████

███████████████████████████████████████████████

███████████████████████████ Compl. ¶¶ 71-72, 76. The Ministrelli Conspirators did not choose Santander's notarial services by happenstance; they repeatedly went to them because of their longstanding banking relationship with Santander's Westmont branch, and because they knew that Santander would willingly provide false notarizations. *Id.* ¶¶ 63, 69. In *Comm'l Union*, by contrast, the defendant bank literally had "no role" in the transaction in question; the plaintiff "conceded . . . that it was wholly unaware of the identity of the notary and did not know the notary was connected with a bank." 49 N.J. at 391-93.

Moreover, ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████ *Id.* ¶¶ 28, 34.

2.   The Complaint Adequately Pleads Santander's
Actual Knowledge of the Conspirators' Fraudulent Schemes

Santander contends that the Complaint fails to show that "other Santander employees" purposefully participated in the enterprise (MTD 24), but gives no reason

why the participation only of Finnerty and Green would be insufficient to impose liability

on Santander. *See* Section III(C)(1). In any event, the Complaint pleads sufficient

detailed facts to permit the strong inference that Santander's employees, including but not

limited to Finnerty and Green, had actual knowledge of the Conspirators' fraudulent

schemes. In addition to their fraudulent notarizations and cover-up of the Ministrelli

Theft, the Complaint alleges that Santander's employees ████████████████

████████████████████████████, Compl. ¶ 88, ████████████

████████████████████████████████████████████

████████. *Id.* ¶¶ 86-94. They knew that Chalmers, as the purported trustee of the

Ministrelli Trust, owed fiduciary duties to LSBPA, yet they aided and abetted his obvious

breaches of fiduciary duty by permitting him to open the Ministrelli Account without

LSBPA's approval and make large unapproved withdrawals from that account. *Id.* ¶¶ 41,

89. They knew that MKwasnik and his law firm were trustees for the Kopacz Trust, yet

they allowed MKwasnik repeatedly to overdraw and embezzle funds from the Kopacz

Trust account, ████████████████████████. *Id.* ¶¶ 146-58.

████████████████████████████████████████████

████████████████████████████████████████████. *Id.*

¶¶ 121, 134. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ *Id.* ¶¶ 126-33, 153-55. They were actively aware of the FTC proceeding

against the Hope Now conspirators detailing their fraudulent use of Santander's accounts,

yet did ████████████████████████████████████

████████████████████████████████████ *Id.* ¶¶ 135-42.

These specific allegations go far beyond those held insufficient in *Pricaspian*

*Dev. Corp. v. Gonzalez*, 2013 WL 5674202, at *20 (D.N.J. Oct. 16, 2013), in which the

plaintiff alleged, with no supporting facts, only that the bank defendants "knew *or had*

*reason to know*" of certain fraudulent activities.[25]  Moreover, Santander ignores that the

heightened duty that banks have to safeguard trust funds from misuse by fiduciaries.  As

the Court held in *Lerner v. Fleet Bank, N.A.*, banks have a "duty to safeguard trust funds

deposited with them when confronted with clear evidence that those funds are being

mishandled," and cannot ignore conduct, such as an attorneys' overdraft of a trust

account or commingling of funds, that itself constitutes a breach of duty.  459 F.3d 273,

295 (2d Cir. 2006).  New Jersey courts have reached similar results under the New Jersey

Uniform Fiduciaries Law, N.J. STAT. ANN. § 3B:14–55, holding that a bank may be liable

for bad faith if it engages in "reckless disregard or purposeful obliviousness of the known

facts suggesting impropriety by the fiduciary. . . . [A]ctual knowledge of and complicity

in the fiduciary's misdeeds is not required." *New Jersey Title Ins. Co. v. Caputo*, 163

N.J. 143, 155 (2000) (bank's failure to investigate despite knowledge of attorney's almost

daily withdrawals from his trust account, his regular dealings at a gambling casino, and

the possibility that he was engaging in tax evasion, could support finding of "bad faith");

*see also Amboy Bank v. Oakshire Group, LLC*, 2011 WL 2304182 at *8-9 (N.J. Super

Ct., App. Div. May 13, 2011) (bank could be liable to non-customers for fiduciary's

misuse of account funds "if its failure to investigate [fiduciary's] disposition of the funds

---

[25]Contrary to Santander's citation, the plaintiff in *Pricaspian* did not even allege the existence of any "red flags" or fraud alerts that the banks ignored.

constituted bad faith in light of its knowledge about the account").

Altogether, Santander's conduct, including its facilitation of MKwasnik's and Chalmers's fiduciary breaches, establishes purposeful participation in the enterprise.

### D.    The Complaint Alleges A Racketeering "Pattern"

Santander contends that the Complaint fails to adequately allege a "pattern" of racketeering acts, arguing that the Ministrelli Theft, Hope Now Fraud, and Ponzi Scheme are not "related." MTD 27-29. But the "relatedness" of these schemes cannot be resolved at the pleadings stage. *Ball 1*, at 108 ("Whether the evidence in a particular case establishes single or multiple conspiracies is generally a question of fact to be resolved by the jury."); *Krasny v. Bagga (In re Jamuna Real Estate LLC)*, 2010 WL 2773395, at *8 (E.D. Pa. Dec. 20, 2006) (same).

In order to establish a cognizable "pattern" of racketeering under NJRICO, the Trustee must make

> A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants *or* victims *or* methods of commission *or* are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

N.J.S.A. § 2C:41-1d(2) (emphases added). NJRICO's relatedness standard is "looser" than the federal standard. *Edgewood Props.*, 2009 WL 150951, at *14. Notably, Santander does not cite a single case dismissing an NJRICO claim for lack of "relatedness." *See* MTD 27 (citing *Ball I*, at 108 (illegal dumping operation constitute "related" NJRICO enterprise); *HJ, Inc. v. Nw Bell Tel. Co.*, 42 U.S. 229 (1989) (reversing dismissal of RICO claims)).

Under the NJRICO's broad definition of relatedness, the schemes alleged in the Complaint are plainly related. They involved the same victims (the Debtors) and the

same purpose ("stripp[ing] the Debtors of millions of dollars in funds," *see* Compl. ¶ 1); and each depended on the perpetrators' relationship and familiarity both with the Debtors' and Santander's personnel.  Contrary to Santander's attempts to distinguish between "theft," "investor fraud" and "bilking" as distinct, fraudulent purposes (MTD 28)—each of those objectives constituted "making-money-at-the-expense-of-[the same victims]," in satisfaction of RICO's "relatedness" requirement. *Abell v. Potomac Ins. Co. v. Illinois*, 846 F.2d 1160 (5th Cir. 1991) (affirming RICO judgment).  The Complaint alleges "related" schemes, as follows:

| Scheme | Purpose | Result | Participants | Victim | Method | Dates |
|--------|---------|--------|--------------|--------|--------|-------|
| Ministrelli | Profit (¶ 217) | Theft (¶ 69) | Santander, MKwasnik, Afaiola, Mfaiola (¶ 185) | Debtors (¶ 3) | Money Laundering (¶ 7); Fraudulent Documents (¶ 8); | November 2009 - June 2010 (¶ 185) |
| Ponzi | Profit (¶ 217) | Theft (¶ 10) | Santander, MKwasnik, KRKB (¶¶ 1, 10) | Debtors (¶ 10) | Money Laundering (¶ 11); Fraudulent Documents/Notes (¶ 142) | October 2007 through 2009 (¶ 147-57) |
| Hope Now | Profit (¶ 217) | Theft (¶ 119) | Santander, MKwasnik, KRKB (¶ 13) | Debtors (¶ 14) | Money Laundering (¶ 122); Fraudulent Documents/Advertisements (¶ 13) | March 2009 - December 2009 (¶ 122, 133) |
| Lacey | Profit (¶ 217) | Theft (¶ 16) | Santander, Afaiola, Mfaiola (¶ 159-162) | Debtors (¶ 163) | Fraudulent Documents (¶¶ 162-63) | February and March 2010 (¶159-60) |

Moreover, the point is largely moot, since the numerous predicate acts committed in service of each of the schemes renders each an independently cognizable racketeering scheme. *See, e.g., Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 373 (D.N.J. 1999) (allegations that during pendency of two mergers, three banks made a total of six false or misleading statements about post-merger employee benefits satisfied NJRICO

"relatedness" standard); *Mayo, Lynch & Assocs., Inc. v. Pollack*, 351 N.J. Super. 486,

488-89 (N.J. App. Ct. 2002) (allegations that attorney's two opinion letters, written six-

weeks apart, were part of bid-rigging scheme, stated claim under NJRICO); *Guidotti*, 866

F. Supp. 2d 315 (claims against *inter alia* banks involved in debt negotiation fraud

cognizable under NJRICO); *Ball I*, at 108 (single dumping operation violated NJRICO).

Even if the schemes also had other agendas, NJRICO does not bar suits consisting of

multiple, "illegal aims." *See Capital First Corp. v. Todd*, 2006 WL 3827329, at *15-16

(D.N.J. Dec. 27, 2009) (enterprise's aims to "fraudulently obtain money," "defraud"

shareholders, and "conceal the racketeering activity" stated NJRICO claim).

### E.    **The Complaint Establishes Numerous Predicate Acts**

#### 1.    The Complaint Adequately Pleads Santander's Intent

For the same reasons set forth in Section III(C), supra, the Complaint adequately

alleges Santander's intent to participate in, and aid and abet, the predicate acts of bank

fraud, sale and transportation of stolen property, money laundering, and mail and wire

fraud (Predicate Acts I through VIII).[26]

#### 2.    The Complaint Adequately Pleads Santander's Substantial Assistance

Also for the same reasons, the Complaint adequately alleges that Santander's

"substantial assistance" necessary to create aiding and abetting liability (Predicate Acts

II, IV, VI and VIII). The Complaint pleads facts sufficient to show (*a*) that Santander

had actual knowledge of the alleged fraudulent schemes (Section III(C), *supra*), and (*b*)

that its participation was indispensable to the success of those schemes (Section III(A),

---

[26]Santander's reliance on federal courts' construction of the more restrictive federal racketeering statute is misplaced. *See* MTD 31 (citing *Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998); *compare Bondi*, 2005 WL 975856, at *24 (rejecting *Rolo* in NJRICO context)).

*supra*). That is far more than required to demonstrate substantial assistance. *See*
RESTATEMENT (SECOND) OF TORTS § 875(b) (legal conduct that aids a wrongdoer can
serve as a basis for aiding and abetting liability); *Failla*, 146 F.3d at 158 n.11 (inaction,
too, can form the basis of liability "if it rises to the level of substantial assistance or
encouragement," (citing *Dici v. Penn*, 91 F.3d 542, 553 (3d Cir. 1996))).[27]

> ### 3. The Complaint Adequately Pleads
> Predicate Acts Of Falsifying Records, Forgery
> And Fraudulent Practices, And Theft By Deception

Santander's intentionally false, sworn written statements in aid of Ministrelli
Theft, and its false testimony in these proceedings to conceal it (Compl. ¶¶ 19, 64-67, 83-
84, 100-01, 103), are independently cognizable under NJRICO as falsifying records,
forgery and fraudulent practices, and theft by deception (Predicate Acts IX and X).
*Pollack*, 351 N.J. Super. at 499 (two intentionally-false opinion letters constituted
NJRICO "pattern"); *Goldman*, 2013 WL 1431680, at *6 (fraudulent statements can
constitute "theft by deception," "deceptive business practices," and "falsifying records");
*State v. Motley*, 2006 WL 848296, at *8 (N.J. App. Ct. Apr. 3, 2006) (affirming "theft by
deception" conviction for obtaining property by submitting falsified documents). *See
also G-I Holdings*, 238 F. Supp. 2d at 539 (upholding RICO claims against law firm for
filing false affidavits).

> ### 4. The Complaint Adequately Alleges Bank Fraud

Santander does not dispute that the Non-Party Conspirators themselves engaged
in a scheme to defraud financial institutions. *Compare* Compl. ¶¶ 142, 1 n.2. Rather,
Santander seeks to avoid NJRICO liability on the basis that it did not participate in its co-

---

[27] Intent is not a separate element of a civil aiding and abetting claim. *Failla*, 146 F.3d at 156-157.

conspirators' bank fraud. *See* MTD 29-30. But knowing participation in each of the enterprise's criminal acts is not required under NJRICO. *See Ball I*, at 110 ("There is no requirement that a co-conspirator have knowledge of all aspects of a conspiracy or knowledge of all participants."). Santander's participation in an enterprise that was furthered by bank fraud creates its liability. *See id.* ("For purposes of a RICO conspiracy, it is irrelevant whether each defendant participated in the enterprise's affairs through different and unrelated crimes.").

## IV.   THE COMPLAINT ALLEGES SANTANDER'S PARTICIPATION IN A FEDERAL RICO CONSPIRACY

The Complaint also adequately pleads a cause of action for conspiracy to violated federal RICO, 18 U.S.C. § 1962(d). Santander misreads *Salinas v. United States*, 522 U.S. 52 (1997), as requiring the Trustee to plead a substantive claim under Sections 1962 (a), (b) or (c) in order to plead a conspiracy claim. *See* MTD 33, 35. But as the Third Circuit held in *Smith v. Berg*, 237 F.3d 532, 537 (3d Cir. 2001), "*Salinas* makes clear that [substantive RICO] liability is not a prerequisite to § 1962(d) liability."

Moreover, like most of Santander's arguments for dismissal, adjudication of the nature and scope of Santander's racketeering conspiracy is premature at this Rule 12(b)(6) stage. *See Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 365 (N.J. App. Ct. 1993) ("[S]o long as there is a *possibility* that the jury can infer from the circumstances that [defendant] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives," the presence of a conspiracy is a question of fact for the jury (emphasis added)).

Santander's contention that the Complaint fails to plead facts sufficient to infer Santander's "knowing participation" fails for the reasons set forth in Section III(C),

*supra.* There is simply no "obvious [innocent] alternative explanation" for Santander's

repeated false certifications, destruction of evidence, false testimony, and knowing

facilitation of the numerous frauds and breaches of fiduciary duty alleged in the

Complaint. Such allegations are more than sufficient to satisfy the notice pleadings

standard applicable to the Trustee's federal RICO conspiracy claim. *See Hill*, 642 F.

Supp. at 1020 (upholding RICO conspiracy claims); *Emcore Corp. v. PwC LLP*, 102 F.

Supp. 2d 232, 265 (D.N.J. 2000) (denying motion to dismiss).[28]

## V.   THE COMPLAINT ALLEGES A COGNIZABLE CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT

Santander incorrectly contends that the Complaint's claim under the New Jersey

Consumer Fraud Act ("**CFA**"), N.J.S.A. 56:8-2, fails to plead proximate causation or that

the Debtors were provided any "service" by Santander. MTD 35-37. The CFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, *misrepresentation, or the knowing, concealment, suppression, or omission of any material fact* with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, *whether or not any person has in fact been misled, deceived or damaged thereby, is declared an unlawful practice.*

"The CFA seeks to encourage private causes of action." *Harnish v. Widener Univ.*, 931

F. Supp. 2d 641, 652 (N.J. Sup. Ct. 2013) (internal punctuation omitted)).

As set forth in Section III(A), *supra*, the Complaint adequately alleges proximate

cause. Moreover, Santander's false certifications, purposeful financial support, and

---

[28]Santander concedes that conspiracy allegations are subject only to the notice pleading constraints of Fed. R. Civ. P. 8(a). *See* MTD 34.

active concealment of its Non-Party Conspirators' schemes adequately alleges a "misrepresentation, or the knowing concealment, suppression, or omission of any material fact," as set forth in the CFA. *See Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576-77 (N.J. 2011) (CFA applies liberally to *any* conduct in connection with the offering, sale or provision of consumer credit); *O'brien v. Cleveland (In re O'brien)*, 423 B.R. 477, 488-89 (Bankr. D.N.J. 2010) (affirming CFA claims).

The Complaint alleges specifically that LSBPA owned the Ministrelli Trust, that the Ministrelli Trust account was opened specifically for purpose of receiving the purchase price for the Trust owed to LSBPA under the express terms of the purchase agreement with Leo/Tranen, and that, by definition the Trust account was held for the benefit of LSBPA. Compl. ¶¶ 6, 72, 79. There is nothing "vague" about those allegations, and they plainly constitute a provision of services for LSBPA.

## VI.    **THE COMPLAINT STATES A CLAIM FOR NEGLIGENCE**

Santander seeks dismissal of the Trustee's negligence claim on the ground that the Debtors were not Santander's customers. MTD 37-38. But the Complaint expressly alleges that a customer banking relationship existed between Santander and the Debtors, and that Santander thus owed a duty of care to the Debtors. Compl. ¶¶ 6, 72, 81, 229, 257. Santander's assertion that these factual allegations are "incorrect" is improper on a Rule 12(b)(6) motion. Moreover, as Santander concedes, New Jersey law imposes a duty of care on banks owed to non-customers with which they have a "special relationship," which can include an "agreement, undertaking or contact." *See ADS Assocs. Gp., Inc. v. Oritani Sav. Bank*, 2011 WL 6820302, at *10-12 (N.J. App. Ct. Dec. 29, 2011) (reversing summary judgment on negligence claims because "resolution of this issue turns on evidence of what [the non-customer] told the Bank's representative when the account was

37

opened and what, if it can be determined, the representative knew or should have known.").

LSBPA's status as the beneficiary of the Ministrelli Trust, for whose benefit the account was purportedly opened and maintained, is precisely the sort of relationship that New Jersey law considers "special." The fact that the account opening was actually fraudulent and not intended to benefit LSBPA, far from diminishing Santander's duty of care, only heightens it. Such fraudulent activity creates a legal relationship actionable as negligence under New Jersey law. *See Clear Advantage Title, Inc. v. Gibb (In re Clear Advantage Title, Inc.)*, 438 B.R. 58, 65 (D.N.J. 2010) ("Courts have recognized tort liability of a financial institution where a special relationship has been established such as fiduciary, confidential, contractual, or legal *or where there was fraud or misrepresentation on part of defendant bank*." (denying summary judgment to bank on Debtors' claims that employee embezzled funds from trust accounts held at the bank) (citations omitted and emphasis added))).

## VII.  THE COMPLAINT ESTABLISHES AIDING AND ABETTING CONVERSION, FRAUD, AND BREACH OF FIDUCIARY DUTY (COUNTS V-VIII)

Santander seeks dismissal of the Trustee's independent claims for aiding and abetting on the same grounds set forth in its challenge to the Trustee's claim under NJRICO. MTD 38-39.[29] But Santander's "knowledgeable participation" in the affairs of the racketeering enterprise is not the same as its knowledgeable participation in individual unlawful acts. *See Goldman Sachs*, 2013 WL 1431680, at *8 (denying motion

---

[29] Contrary to Santander's interpretation of the Complaint, the Trustee's aiding and abetting fraud claims are not limited to the Ministrelli Trust.

to dismiss aiding and abetting fraud claim because defendants failed to "raise any

independent arguments relating to plaintiff['s] claim for aiding and abetting fraud"). In

any event, the Complaint pleads Santander's actual knowledge and substantial assistance

both with respect to the enterprise and its individual acts, for the reasons set forth in

Section III(C), *supra*.

## VIII. THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT (COUNT IX)

Santander seeks dismissal of the Trustee's claim for unjust enrichment on the

ground that Santander received no benefit from the Debtors. MTD 39. But Santander

undeniably received substantial benefits (including sales bonuses, extraordinary overdraft

fees and services charges) from its participation in the alleged racketeering schemes and

other torts, and at least some of these fees (including, for example, Santander's fees in

connection with the Ministrelli Theft) were paid with funds stolen from the Debtors.

Compl. ¶¶ 9, 15-16, 70, 47-49, 90-104, 125(f)-(h)), 161. *See County of Essex v. First

Union Nat'l Bank*, 186 N.J. 46, 56 (N.J. 2006) (requiring disgorgement from bank

employee); *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 682 (D.N.J. 2012) (claim to

overdraft fees stated claim for unjust enrichment).

Santander's receipt of funds from wrongdoing that injured the Debtors gives rise

to a claim for unjust enrichment, regardless of any privity between the parties. *See Hecht

v. Malvern Prep. Sch.*, 716 F. Supp. 2d 396, 403 (E.D. Pa. 2010) (claim that school

received misappropriated funds stated claim for unjust enrichment in ponzi scheme case).

## IX. THE COMPLAINT STATES A CLAIM FOR FAILURE TO TRAIN AND SUPERVISE

Santander's challenge to the Complaint's claims for failure to train and supervise

relies solely on its incorrect premise, addressed in Section VI, *supra*, that the Debtors had

no "special relationship" with Santander.

## X.    SANTANDER DOES NOT CHALLENGE LEAVE TO AMEND

To the extent this Court deems defective any of the claims asserted in the Complaint, the Trustee respectfully requests leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court deny Defendant's Motion to Dismiss.

Dated: April 28, 2014
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  mumford@lrclaw.com
        brown@lrclaw.com

Carl W. Oberdier
Kellen G. Ressmeyer
**OBERDIER RESSMEYER LLP**
655 3rd Avenue, 28th Floor
New York, New York 10017
Telephone: (212) 659-5141
Facsimile: (646) 349-4925
Email:  cwo@oberdier.com
        kgr@oberdier.com

*Special Litigation Co-Counsel*
*For the Chapter 11 Trustee*