## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIBERTY STATE BENEFITS OF DELAWARE, INC. *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 11-12404 (KG) |
| RICHARD W. BARRY, as Chapter 11 Trustee for estates of LIBERTY STATE BENEFITS OF DELAWARE, INC. *et al.*,<br><br>       Plaintiff,<br><br>  -against-<br><br>SANTANDER BANK, N.A., formerly known as Sovereign Bank, N.A.,<br><br>       Defendant. | Adv. Proc. No. 14-50020 (KG) |

## REPLY BRIEF IN FURTHER SUPPORT OF
## SANTANDER BANK, N.A.'S MOTION TO DISMISS

SCHNADER HARRISON SEGAL & LEWIS LLP
Richard A. Barkasy
Fred W. Hoensch
824 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)
rbarkasy@schnader.com
fhoensch@schnader.com

*Of Counsel*

Mathew B. West
Allison A. Snyder
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, New York 10005
(212) 973-8000 (telephone)
mwest@schnader.com
asnyder@schnader.com

Dated:  May 23, 2014     *Attorneys for Santander Bank, N.A.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

RESPONSE TO TRUSTEE'S STATEMENT OF FACTS ............................................................ 4

ARGUMENT .................................................................................................................................. 7

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*300 Broadway v. Martin Friedman Assocs., P.C.*,
    2009 U.S. Dist. LEXIS 95069 (D.N.J. Oct. 13, 2009)............................................................12

*Allegheny Gen. Hosp. v. Phillip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000) .......................................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................11, 12

*Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006).............................................................................10

*Breslin v. Brainard*,
    2003 U.S. Dist. LEXIS 19609 (E.D. Pa. Oct. 14, 2003).............................................................18

*Brody v. Hankin*, 145 Fed. Appx. 768 (3d Cir. Aug. 29, 2005)..........................................................8

*Capital First Corp. v. Todd*, 2006 WL 3827329 (D.N.J. Dec. 27, 2006) .........................................17

*Commw. of Pa. ex rel Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ......................................................................................................15

*Cowher v. Carson & Roberts*, 40 A.3d 1171 (N.J. Super. Ct., App. Div. 2012).............................11

*Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.)*,
    2011 Bankr. LEXIS 629 (Bankr. S.D.N.Y. Feb. 22, 2011) ..................................................8-9

*Failla v. City of Passaic*, 146 F.3d 149 (3d Cir. 1998)....................................................................17

*FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995) ..........................................................9-10

*Geco Corp. v. H.D. Smith Wholesale Drug Co.*,
    2006 U.S. Dist. LEXIS 84130 (D.N.J. Nov. 17, 2006).................................................................8

*Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011).......................................................19

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 866 F.Supp.2d 315
    (D.N.J. Dec. 20, 2011) .............................................................................................................16

*Hinton v. Department of Justice*, 844 F.2d 126 (3d Cir. 1988) ........................................................8

*Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258 (1992)....................................................10

*In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ......................................7

*In re Ikon Office Solutions, Inc.*, 66 F. Supp. 2d 622 (E.D. Pa. Sept. 14, 1999) ..........................13

*In re NJ Affordable Homes Corp.*, 2013 Bankr. LEXIS 4798
    (Bankr. D.N.J. Nov. 8, 2013).....................................................................................................10

*In re O'Brien*, 423 B.R. 477 (Bankr. D. N.J. 2010)........................................................19

*In re Tyco Int'l Ltd.*, 2007 U.S. Dist. LEXIS 42401 (D.N.H. Jun. 11, 2007) ................3

*Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. Feb. 8, 2012) .......................7-8

*Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230 (7th Cir. 2003) ...............10

*Krasny v. Bagga (In re Jamuna Real Estate LLC)*, 357 B.R. 324
   (Bankr. E.D. Pa. Dec. 20, 2006) ................................................................15

*Leibholz v. Hariri*, 2011 U.S. Dist. LEXIS 41246 (D.N.J. Apr. 15, 2011) ...................15

*Mayo, Lynch & Assocs., Inc. v. Pollack*, 799 A.2d 12 (N.J. Super. Ct., App. Div. 2002) ..........17

*Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364 (D.N.J. 1999) .........................16

*O'Connell v. Pension Fin. Svcs., Inc. (In re Arbco Capital Mgmt., LLP)*,
   498 B.R. 32 (Bankr. S.D.N.Y. Sep. 23, 2013)............................................9

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
   267 F.3d 340 (3d Cir. 2001) ..............................................................9, 10

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*,
   721 F.3d 54 (2d Cir. 2013) ...............................................................9

*Pricaspian Dev. Corp. v. Gonzalez*, 2013 U.S. Dist. LEXIS 148713
   (D.N.J. Oct. 16, 2013)..................................................................19

*Rebish v. Great Gorge*,
   541 A.2d 237 (N.J. Super. Ct., App. Div. 1998)....................................12

*Rolls-Royce Motor Cars v. Schudroff*, 929 F. Supp. 117 (S.D.N.Y. May 28, 1996) ...................15

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) ....................................9-10

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001)..........................................18

*State v. Ball*, 632 A.2d 1222 (N.J. Super. Ct., App. Div. 1993)..............................15, 17

*State v. Ball*, 661 A.2d 251 (1995) ................................................12, 13

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ..............................9

*Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264 (D.N.J. Aug. 31, 1990).................13

*Zahl v. N.J. Dep't of Law & Pub. Safety*,
   2010 U.S. Dist. LEXIS 98596 (D.N.J. Sep. 21, 2010) ..........................18

*Zazzali v. Hirschler Fleischer, P.C.*,
   482 B.R. 495 (D. Del. 2012)........................................................8, 9

**STATUTES**

18 U.S.C. § 541 ..................................................................................................................10

18 U.S.C. § 1503 ...................................................................................................................6

N.J.S.A. § 3B:14-55 ...........................................................................................................17

N.J.S.A. § 10:5-12 .............................................................................................................13

Defendant Santander Bank, N.A. (formerly known as Sovereign Bank, N.A.) ("Santander" or

"the Bank"), through its undersigned counsel, respectfully submits this memorandum of law in further

support of its motion ("Moving Brief" or "Mov. Br."), pursuant to Federal Rule of Civil Procedure

("FRCP") 12(b)(6), to dismiss the Complaint, dated January 10, 2014 (the "Complaint" or "Compl."),

and in response to the Chapter 11 Trustee's Answering Brief In Opposition to Santander, N.A. Motion

to Dismiss, dated April 28, 2014 ("Opposition" or "Opp. Br.").[1]

## PRELIMINARY STATEMENT

Santander's Moving Brief revealed the Trustee's central, unsolvable problem:  After his three-

year investigation, including extensive, voluntary Bankruptcy Rule 2004 discovery, the Trustee's

purported case against Santander can be reduced to a few acts by Santander employees, involving

banking services provided to persons other than the Debtors, and wholly unrelated fraudulent actions by

others, the alleged purpose of which was unknown to Santander or its employees.  With no federal or

state bankruptcy causes of action, or even a colorable common law claim, to assert, the Trustee attempts

to connect unrelated and independent frauds, perpetrated by others, to portray Santander as a knowing

participant in a *criminal* RICO scheme.  But as the Moving Brief demonstrated, Santander had only an

incidental connection to the Ministrelli Trust Theft and *no* role in the Debtors Ponzi Scheme or the Hope

Now Fraud.  Simply put, the Complaint fails to allege a plausible criminal RICO claim and the

Opposition fails to rectify that problem.

Faced with this dilemma, the Trustees raises the volume in the Opposition, relying heavily on an

alleged three-year "cover-up."   As part of the Trustee's new focus on the alleged "cover-up," "beliefs"

and opinions of the Trustee are elevated to fact.  For example:

- Notary books that were lost "around the same time," (Compl. ¶ 112), have now
  been lost "on the same day," which makes such a loss a "virtual impossibility,"
  and thus Santander employees Kimberly-Hicks Finnerty ("Finnerty") and Edward
  Green ("Green") must be lying.  (Opp. Br. at 11.)

---

[1]  The Debtors in these cases are Liberty State Financial Holdings Corp. ("LSHF"), Liberty State Benefits of
Pennsylvania, Inc. ("LSBPA"), Liberty State Benefits of Delaware Inc. ("LSBDE") and Liberty State Credit, Inc.
("LSC").

- Allegations that Kimberly Finnerty and Green, "on information and belief," destroyed their notary books (Compl. ¶ 108), have now become factual statements that Finnerty and Green lied under oath, including before this Court, about their notary books.  (Opp. Br. at 2, 10, 11.)

Perhaps most disturbing are the Trustee's new allegations that Santander *knowingly destroyed* "countless emails during the crucial months leading up to the [Ministrelli Trust] Theft," (Opp. Br. at 27), and that the Trustee's investigation was "significantly hampered by Santander's spoliation of large quantities of material evidence."  (Opp. Br. at 16.)[2]  Santander's alleged spoliation of email is not only the capstone of every "cover-up" allegation contained in the Opposition, the Trustee argues it should be the basis for lessening his pleading standard generally, and in pleading scienter in particular.  But the Trustee knows these allegations to be false and that there was no spoliation of email.  Santander is deeply troubled by the Trustee's apparent willingness to misrepresent the facts to the Court in pursuit of these claims.[3]

The irrefutable facts demonstrate the Trustee's misrepresentations:

- Santander's prior counsel advised the Trustee's counsel that in late 2012 Santander purged email from prior to December 2009 from its active email archive system as part of routine data maintenance and in connection with transitioning to a new email archive system.  (Declaration of Fred W. Hoensch, dated May 23, 2014 ("Fred W. Hoensch Decl."), Ex. A, at 2 (point 3).)

- Santander's counsel further advised Trustee's counsel that email prior to December 2009 were available on the Bank's monthly back-up tapes, but Santander objected on burden and expense grounds to restoring these tapes and searching these email, especially as part of Rule 2004 discovery.  (*Id*.)

- In response, Trustee's counsel stated that "we will provisionally agree that Santander need not search its monthly backup takes at present, while reserving our rights at a later time."  (*Id*. at 1.)

In sum, the Trustee is fully aware that the "purged" email from late 2009 and before are available on Santander's backup tapes; the Trustee simply chose not to request that Santander search those backup tapes for responsive email.

---

[2]  As the Trustee could not know the contents of emails allegedly destroyed, it is objectionable for him to allege as a matter of fact that the emails contain "material evidence."

[3]  Indeed, Santander believes such knowing misrepresentations regarding Santander's alleged "spoliation" of

Moreover, the Trustee's suggestion that Santander purged email in late 2012 to knowingly destroy "material evidence" "long after it was on notice of the Trustee's claim" in this case, (Opp. Br. at 11), is completely irresponsible.  Once again, the facts, well known to the Trustee, are to the contrary:

- In November 2012, Trustee's Counsel in this proceeding submitted his application to be retained as Special Counsel, which included an affidavit identifying in Exhibit A "Potential Parties In Interest" and stating that his firm had no conflicts with any of the listed parties.  (Affidavit of Carl Oberdier, dated November 21, 2012 (the "Oberdier Aff."), at ¶ 4, (D.I. 603-1).)

- Santander, however, appears nowhere on the Trustee's November 21, 2012 "Potential Parties in Interest List" – not as "Defendant," not as a "Potential Defendant" – not even as a "Party in Interest." (Oberdier Aff., Ex. A.)

In sum, it is wholly unreasonable for the Trustee to suggest that the Bank was on notice of the Trustee's possible claims at a time when the Trustee had not himself identified Santander as a "Potential Defendant" or even a "Party in Interest."

Ignoring the Trustee's "beliefs," hunches, attenuated events, and bald misrepresentations, when the actual facts as pled are examined, the allegations of the Complaint fail to adequately allege RICO causation, the existence of a criminal enterprise, purposeful and knowing participation by Santander in a criminal enterprise, and/or relatedness among the alleged frauds, among other deficiencies.

emails rise to the level of FRCP 11 sanctions.

## RESPONSE TO TRUSTEE'S STATEMENT OF FACTS

### A.    The Trustee's Pleading Practices

In its Moving Brief, Santander established clearly that the Trustee attempts to plead around the fact that it was the Debtors who were responsible for the very wrongdoing alleged in the Complaint. (Mov. Br. at 3-5.)  The Trustee takes exception to Santander highlighting such practices, (Opp. Br. at 2), but does not refute that is exactly what he did, nor could he.  Respectfully, such pleading practices should have consequences.

### B.    The Debtors Ponzi Scheme

In his Opposition, as in the Complaint, the Trustee alleges that "Santander colluded with M. Kwasnik" regarding the Debtors Ponzi Scheme, (Opp. Br. at 13), but he points to no allegations to support such a conclusion.  Rather, the Trustee cites to unnamed, unidentified accounts, purportedly with Santander, in which M. Kwasnik allegedly "repeatedly laundered money."  (Opp. Br. at 13.)  The only account specifically identified in the Complaint concerning the Debtors Ponzi Scheme, however, was the Kopacz Trust account.  (Mov. Br. at 6-7; Compl. ¶¶142 to 156.)  The Trustee's conclusory allegation that, had Santander detected M. Kwasnik's allegedly improper transactions in the Kopacz Trust account, the Kopacz Trust would not have bought a fraudulent note, (Compl. ¶ 158), falls far short of sufficiently alleging Santander's knowing participation in the Debtors Ponzi Scheme.[4]

### D.    The Ministrelli Trust Theft[5]

The Trustee alleges that Santander acted "in concert" with the Ministrelli Conspirators, (Mov. Br. at 4), but the Trustee does not, because he cannot, point to *a single* allegation contained in the

---

[4]  The Trustee's attempt to connect Santander to other accounts related to the Debtors Ponzi Scheme, (Opp. Br. at 13, n.13), fails.  The Trustee alleges that Santander disregards the "Complaint's allegations that M. Kwasnik also used *accounts* held by himself and his law firm to launder money in connection with his *scheme*."  (Opp. Br. at 13, n.13 (emphasis added) (citing Compl. ¶ 142).)  Such an obscure allegation, citing unidentified "accounts" in connection with an unidentified "scheme," is insufficient to satisfy FRCP 8, much less FRCP 9(b).  Santander had no accounts with the Debtors, (Mov. Br. at 1, 37-38), a point the Trustee does not refute.  After a three-year investigation, the Trustee has failed to connect Santander to the Debtors Ponzi Scheme, but for the Kopacz Trust account, such as it is.

[5]  The Trustee does not refute that the Debtors' management, including M. Kwasnik, M. Erhard and D. Duffy,

Complaint that any Santander employee, Finnerty and Green included, had actual knowledge of the alleged Ministrelli Trust Theft. It defies reason that, for example, the allegedly improper notarizations could be "integral" to the Ministrelli Trust Theft, (Opp. Br. at 8), when there are no allegations that Finnerty or Green even knew about the alleged fraud. Without any basis to allege that Santander had actual knowledge of the Ministrelli Trust Theft, the Complaint, and in particular the Opposition, simply sling mud at Santander.

       1.    <u>Finnerty and Green</u>

The Trustee's arch tone in the Opposition can be attributed to the fact that Santander's only alleged connection with the Ministrelli Trust Theft is through Finnerty and Green, which amounts to alleged improper notarizations and providing banking services, such as opening new banking accounts. Thus, the Trustee resorts to alleging, as if it were proven fact, that Finnerty and Green lied under oath at their depositions and before this Court. (Opp. Br. at 10, 11, 22, 27, 28, 34, 36.) But these are not allegations of fact, they are simply a rhetorical tool that the Trustee wields with alarming indiscretion to obscure the fact that he cannot assert that Santander had actual knowledge of, or more than an incidental connection to, the Ministrelli Trust Theft.

The Trustee also alleges that, "[m]ost critically," Santander employees broke an unnamed law in permitting Chalmers to "open an account as trustee for LSBPA's Ministrelli Trust." (Opp. Br. at 8.) Nowhere, however, does the Complaint allege that Santander had notice that LSBPA was the alleged owner of the Ministrelli Trust. Indeed, the Complaint alleges only that the Ministrelli Trust account was opened "purportedly on behalf of LSBPA," (Compl. ¶¶ 72, 81, 257), which underscores the fact that this "purported" benefit to LSBPA was not "express."

       2.    <u>Santander's Knowledge of the Conspirators' Money Laundering</u>

The Trustee's Opposition devotes only two paragraphs to a section called "Santander's Knowledge" of the alleged Ministrelli Trust Theft, (Opp. Br. at 9-10), without actually alleging

---

were principals in the Ministrelli Trust Theft or that he pled around that fact. (Mov. Br. 7-8.)

Santander had any such knowledge. As Santander noted, the Ministrelli Trust Theft consisted of only four transactions in three accounts, (Mov. Br. at 9-10), not the flood of activity the Complaint attempts to portray. Although the Trustee asserts baldly that these transactions consisted of "obvious money laundering," (Opp. Br. at 9), which is dubious speculation, there is no allegation in the Opposition or the Complaint that Santander actually knew about or participated in the alleged money laundering. Rather, there are allegations that unnamed Santander employees "ignored or overrode" fraud alerts related to these four transactions, (Opp. Br. at 10), which clearly do not rise to the level of "actual knowledge" the Trustee suggests.[6]

### 3.    Santander's Alleged Cover-Up

In light of the sparse, tenuous allegations connecting Santander and the Ministrelli Trust Theft, much less pleading actual knowledge of the fraud, the Opposition leans heavily and frequently on Santander's so-called "Cover-Up." (Opp. Br. at 10-11.) While the 72-page Complaint barely mentions the phrase "cover-up," (Compl. ¶¶ 176 (a), 208), the Opposition makes it the centerpiece of almost every argument. (Opp. Br. at 3, 10 (twice), 16, 22, 27 (three times), 28 (twice) and 29.) In short, the Trustee has decided he has no choice but to pound the table in opposition to the motion to dismiss.[7]

Upon review, however, the alleged cover-up consist of nothing more than irresponsible allegations of lying under oath by Finnerty and Green and false allegations of Santander having destroyed "material" emails.[8]

---

[6]  The Trustee was admonished for misleadingly alleging that it was the Westmont Branch employees who "overrode the multiple alerts." (Mov. Br. at 10 (citing Compl. ¶¶ 88, 94).) The Trustee does not refute that his allegations were improper, but he does refrain from repeating his overzealous attempt to infer "actual knowledge" where none exists. The Trustee also does not refute that he misleadingly alleged that Finnerty and Green "ignored *hundreds* of suspicious and criminal activities in the Non-Party Conspirators accounts," (Mov. Br. at 10, n.12 (citing Complaint ¶52 (emphasis in original)), when in fact, as the Trustee knows, branch employees do not review activity in customer accounts. These misleading statements demonstrate how far the Trustee is willing to go to manufacture a connection between Santander's employees and the Non-Party Conspirators' banking activity when faced with no actual connection between the fraudsters and Santander.

[7]  The Trustee escalates matters further and accuses Santander of "Obstruction of Justice," (Opposition to Motion to Transfer, at 10-11), a felony crime pursuant to 18 U.S.C. § 1503.

[8]  Given the lack of actual "facts" to support the Bank's participation in a "cover up" and the Trustee's admission that such alleged participation is the basis of his NJ RICO claims against Santander, that claim must fail.

4.    <u>The Hope Now Fraud</u>

The Trustee alleges that Santander "colluded with M. Kwasnik and []KRKB" to steal funds from "financially desperate customers seeking to renegotiate their mortgages," (Opp. Br. at 12), but, as set forth in the Moving Brief, the Hope Now Fraud was over by the time KRKB opened the "so-called" Hope Now Account at Santander.  (Mov. Br. at 11-12.)  In a footnote, the Trustee disputes that the Hope Now Fraud was over by the time the Debtors made transfers into the Hope Now Account, (Opp. Br. at 13, n.12), but fails to explain the basis for that belief.

<u>**ARGUMENT**</u>

I.    **THE LEGAL STANDARD**

The Trustee alleges that Santander "repeatedly violates" federal pleading standards with references to "deposition testimony, third-party affidavits, the Trustee's pleadings, [and] Santander's own internal documents," (Opp. Br. at 15), but that is incorrect.  As Santander set forth in the Moving Brief, (Mov. Br. at 3, n.3), which the Trustee did not refute, a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotation marks omitted).[9]

The Trustee's contention that a court's judicial notice of prior court filings "only extends to the existence and authenticity of those proceedings," not the truth of the matters asserted therein, (Opp. Br. at 15), is wrong.  The case cited by the Trustee for that proposition, *Jean-Laurent v. Wilkerson*, 461 Fed.

---

(Trustee's Opposition to Motion to Transfer, at 3 ("Santander's intentional participation in the cover-up" was the "primary force behind the Trustee's assertion of claims under" NJ RICO").)

[9]  The Complaint specifically alleges that the allegations are "drawn from information uncovered during the Trustee's investigation . . . including account records and other documents produced by Santander, testimony given by its employees" and other sources.  (Compl. ¶ 1 n.2.)  The Trustee relied upon, among other things, (i) the deposition testimony of Finnerty and Green to baselessly accuse them of perjury, (ii) Santander's account opening documents to accuse Santander of improperly opening accounts and violating federal law, and (iii) Santander's customer account statements to accuse the bank of money laundering, all as part of alleging that Santander participated in part of a *criminal* enterprise.  It is an untenable legal proposition for the Trustee to state he relied on Santander's documents and testimony, identify the documents and testimony he relied upon, and then suggest that Santander is prohibited from relying on the same documents and testimony.

Appx. 18, 23 (2d Cir. Feb. 8, 2012), stands for no such thing. In *Jean-Laurent*, the Second Circuit noted

simply that an amended pleading renders a prior pleading of no legal effect. *Id.*

The Trustee's attempt to distinguish the cases cited by Santander, (Mov. Br. at 4, n.4), on the

grounds that these courts took notice "only of facts that were truly undisputed" (Opp. Br. at 16, n.15), is

unavailing. Here, Santander does not introduce the Trustee's prior pleadings and sworn statements

before this Court to dispute them, and presumably the Trustee does not dispute his prior sworn

statements either. Rather the bank introduces these documents solely to demonstrate that the Trustee is

purposefully pleading around his past sworn statements for misleading ends, which should not be

condoned.[10]

## II.    *IN PARI DELICTO* BARS THE CLAIMS AGAINST SANTANDER[11]

The Trustee's assertion that Santander's *in pari delicto* argument fails "because it relies on

asserted facts found nowhere in the complaint," (Opp. Br. at 16), should be rejected. What the Trustee

claims, in effect, is that form should be elevated over substance; that is, since the Complaint surgically

extracts the Debtors from their principal roles in the Debtors Ponzi Scheme and the Ministrelli Trust

Theft, the defense cannot apply. In other pleadings and sworn testimony before this Court, however, the

Trustee makes clear that it was the Debtors, through their principals and management, who perpetrated

the frauds alleged in the Complaint. (Mov. Br. at 3-4, 7-8.) The Court may take judicial notice of those

pleading and sworn testimony on this motion to dismiss. *See Evergreen Solar, Inc. v. Barclays PLC (In*

---

[10]  The other cases cited by the Trustee, (Opp. Br. 15-16), are similarly inapt. In *Brody v. Hankin*, 145 Fed. Appx. 768, 772 (3d Cir. Aug. 29, 2005), the court merely reiterated the rule that "a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." *Geco Corp. v. H.D. Smith Wholesale Drug Co.*, 2006 U.S. Dist. LEXIS 84130, at *6-7 (D.N.J. Nov. 17, 2006) (courts may consider "a undisputedly authentic document upon which the complaint is based . . . including copies of pleadings and other materials filed in courts"). In *Hinton v. Department of Justice*, 844 F.2d 126, 130 n.1 (3d Cir. 1988), the court would not consider affidavits submitted by the appellant FBI that were (i) created *by the FBI*, (ii) were not in the appellate record, (iii) and concerned issues in dispute.

[11]  The rationale for affording a trustee a more liberal pleading is inapplicable where, as here, the Trustee has conducted an exhaustive three-year inquiry and has taken over a range of Rule 2004 pre-action discovery from Santander. *See, e.g.*, *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 511-12 (D. Del. 2012). The Trustee's claim that the Court should invoke some sort of negative inference based on "spoliation of large quantities of material evidence," (Opp. Br. at 16), is negated by the fact that no such spoliation took place.

*re Lehman Bros. Holdings, Inc.)*, 2011 Bankr. LEXIS 629, at *9, n.6 (Bankr. S.D.N.Y. Feb. 22, 2011).[12]

      1.    <u>The Adverse Exception Does Not Apply</u>

The adverse interest exception applies only in certain circumstances not present here.  The

exception is a narrow one that should be strictly applied.  *See Zazzali*, 482 B.R. at 513; *Wight v.*

*BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000).  Thus, courts have found that the exception does

not apply if the corporation received short-term benefits as a result of the alleged wrongful conduct,

even if it suffered long-term harm.  *O'Connell v. Pension Fin. Svcs., Inc. (In re Arbco Capital Mgmt.,*

*LLP)*, 498 B.R. 32, 33-34 (Bankr. S.D.N.Y. Sep. 23, 2013) ("later-investors' funds to pay money owed

to earlier investors" represented a benefit to negate the adverse interest exception).

Here, the Complaint specifically alleges that at least $7 million of the $13 million in alleged

investments by "later victims" was used "to repay earlier investors in the Debtors' notes, often with

interest . . . ."  (Compl. ¶ 10.  *See also id.* at ¶ 144.)  Because the Debtors plainly received a benefit,

albeit short-term, from the Debtors Ponzi Scheme, the adverse interest exception does not apply.

*O'Connell*, 498 B.R. at 33-34

      2.    <u>The Trustee Was Not "Cleansed" by His Pre-Filing Appointment</u>

The Trustee alleges that because he was appointed a fiscal agent prior to the Debtors filing for

bankruptcy, he is "cleansed" of the wrongdoing of the Debtors in his role as Trustee.  (Opp. Br. 19-

20.)[13] Each of the cases cited by the Trustee, all of which are district court cases from outside the Third

Circuit, rely primarily on two non-Third Circuit opinions, namely, *Scholes v. Lehmann*, 56 F.3d 750,

754-55 (7th Cir. 1995), and *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995), for the

---

[12]  The Trustee's contention that the *in pari delicto* defense is not suitable for a FRCP 12(b)(6) motion, (Opp. Br. at 17), is without merit.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001); *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 64-65 (2d Cir. 2013).

[13]  As a threshold matter, each of the cases cited by the Trustee, (Opp. Br. at 19), concerned a purportedly "cleansed" receiver, custodian or creditor who *initiated* the bankruptcy.  Here, in contrast, the bankruptcy petitions were filed by the Debtors, (*see, e.g.*, LSBDE chapter 11 petition, dated August 29, 2011) (Corporate Resolution signed by W. Kwasnik) (D.I. 1), which means, unlike the cases cited by the Trustee, that the Debtors' management were in control of the Debtors and could and did make important corporate decisions for the Debtors.

proposition that a court-appointed receiver is not subject to the *in pari delicto defense*, but neither *Scholes* nor *O'Melveny* concerned a trustee exercising his powers pursuant to 18 U.S.C. § 541, as the Trustee does here.

In *Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 236 (7th Cir. 2003), the Seventh Circuit limited its finding in *Scholes* to fraudulent conveyance cases where the receiver is "seeking to recover the diverted funds from the beneficiaries of the diversions," not cases, as here, where the receiver is pursuing tort damages. In *Lafferty*, 267 at 358 (3d Cir. 2001), the Third Circuit specifically found *Scholes* and *O'Melveny* "easily distinguishable" because "unlike bankruptcy trustees, receivers are not subject to the limits of section 541." *See also Baena v. KPMG LLP*, 453 F.3d 1, 9-10 (1st Cir. 2006) (rejecting the "few courts, but still distinctly in the minority," including *Scholes* and *O'Melveny*, that utilized the "innocent decision-maker" theory).[14]

## III.   THE NJ RICO CLAIM SHOULD BE DISMISSED

### A.   The Complaint Has Failed to Adequately Allege Causation[15]

The Trustee takes exception to Santander's view that its alleged participation in the Ministrelli Trust Theft is limited primarily to the notarization of the Leo Group sale agreement. (Opp. Br. at 22.) But in response, the Trustee merely cites three other allegedly improper notarizations, which are even further removed from the alleged fraudulent sale of the Ministrelli Trust, and Santander allegedly waiving opening account fees and monitoring the first incoming wire from the Leo Group.[16] Apart from the fact that these allegations, in particular the allegations concerning the two allegedly back-dated

---

[14]  In *In re NJ Affordable Homes Corp.*, 2013 Bankr. LEXIS 4798, at *107-09 (Bankr. D.N.J. Nov. 8, 2013), the court, after analyzing *Scholes* and *O'Melveny* in the bankruptcy context, found that the trustee was not inoculated for his 11 U.S.C. § 541 claims based on pre-petition conduct.

[15]  Notwithstanding the Trustee's suggestion that courts take a more lenient approach regarding pleading a NJ RICO claim, (Opp. Br. at 20-21), which has limits the Trustee has far exceeded, no court cited by the Trustee suggests that standard applies to pleading proximate cause.

[16]  The Trustee's argument that proximate cause is an issue for the "fact finder," (Opp. Br. at 23), is not well taken. The cases cited by the Trustee are negligence cases, which are inapplicable to RICO proximate cause. RICO proximate cause is a statutorily-mandated prerequisite for standing to bring a civil RICO action. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Dismissal is appropriate on a motion to dismiss where, as here, the alleged injury is merely an indirect result of the predicate acts. *See, e.g.*, *Allegheny Gen. Hosp.*

documents, are bald speculation not afforded the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), they fail to allege proximate causation.  The Trustee identified clearly in the Complaint the proximate cause for the Ministrelli Trust Theft:

> At some point in late 2009, the Ministrelli Conspirators obtained an offer from the Leo Group LLC ("Leo [Group]") . . . to purchase the Ministrelli Policy for $1.75 million.  Without the Debtors' authorization or knowledge, the Ministrelli Conspirators decided to accept the offer, purported to sell the Ministrelli Trust on behalf of the Debtors, but kept the entire purchase price for themselves.

(Compl. ¶ 78.)  Santander was not a "Ministrelli Conspirator."  (Compl. ¶ 41.)[17]

The Trustee suggests that the Debtors Ponzi Scheme and the Hope Now Fraud had another, forgotten victim, namely, the Debtors, (Opp. Br. at 22), but that is not well taken.  The Debtors were the perpetrators of the Debtors Ponzi Scheme and, as alleged in the Complaint, its victims were the "elderly persons and disabled persons."  (Compl. ¶ 5.)  Similarly, the only victims of the Hope Now Fraud, as alleged in the Complaint, were "desperate customers seeking to renegotiate their mortgages" who had the misfortune of giving fraudsters their money.  (Compl. ¶ 7.)  The fact that Debtors *themselves* transferred money into an account at KRKB *after* the Hope Now Fraud ended, does not make them a victim of the Hope Now Fraud.  Moreover, even if the Debtors could conceivably be construed as victims of the Debtors Ponzi Scheme and the Hope Now Fraud, Santander's alleged participation in those two schemes was virtually non-existent.[18]  (Mov. Br. at 18-19.)

---

*v. Phillip Morris, Inc.*, 228 F.3d 429, 444 (3d Cir. 2000).

[17]  The Trustee's also cites to the alleged "cover-up" by Finnerty and Green of the Ministrelli Trust Theft as somehow establishing proximate cause, (Opp. Br. at 22), but that is not persuasive.  It is plain that the alleged events occurring long after the alleged Ministrelli Trust Theft took place could not have been its proximate cause. The Trustee's allegations regarding the damages the Debtors allegedly suffered due to the "artificially low" Leo Group settlement and the additional costs of the Trustee's investigation, are nowhere pled in the Complaint, much less with regard to Ministrelli Trust Theft and should be disregarded.

[18]  The Trustee's suggestion that another entity's conduct can be attributable to Santander to satisfy the RICO proximate cause requirement, (Opp. Br. at 23-24), is without merit.  The sole case the Trustee cites for this proposition, *Cowher v. Carson & Roberts*, 40 A.3d 1171 (N.J. Super. Ct., App. Div. 2012), is wholly inapposite. The issue in *Cowher* was whether a supervisor could be held liable under New Jersey's Law Against Discrimination.  Proximate cause is never addressed in *Cowher*.

Finally, the Trustee, raises for the first time in the Opposition, which is not allowed, the theory that the Debtors' estates were damaged by none other than the "cover-up." (Compl. ¶ 22.) The Trustee's transparent attempt to cobble damages together from the Ministrelli Trust Theft in some way connected to Santander, especially consisting of the discredited "cover-up," is testament to the fact that there is no such connection.

## B.    The Complaint Fails To Adequately Allege An NJ RICO Enterprise

The Trustee erroneously asserts that the NJ RICO enterprise element is "no more than the sum of the racketeering acts." (Opp. Br. at 24.) The Trustee's definition of enterprise was expressly rejected by the New Jersey Supreme Court in *State v. Ball*, 661 A.2d 251, 261, 271 (1995) ("'enterprise' is an element separate from the 'pattern of racketeering activity'" and "the existence of both [must be proven] in order to establish a RICO violation") ("*Ball II*").

In *Ball II*, the New Jersey Supreme Court further held that, in order to prove the existence of an enterprise, there must be evidence of "organization," and set forth the criteria establishing such an "organization." 661 A.2d at 271. Although the Trustee asserts the Complaint satisfies this standard, (Opp. Br. at 25 (citing Compl. ¶ 176)), it clearly does not. The allegations concerning Santander's alleged role in the enterprise are entirely conclusory and vague and there are no details that would support an inference of Santander's alleged knowledge of the objectives of the enterprise and association with the other members. (Compl. ¶ 176 a-c.)[19]

## C.    The Complaint Does Not Adequately Allege Santander's Knowing Participation

The Trustee's suggestion that Finnerty and Green's allegedly false testimony, taken long *after* the alleged Ministrelli Trust Theft took place, amounts to pleading NJ RICO actual knowledge and

---

[19]  Complaints are routinely dismissed for failing to plead a RICO enterprise separate from pattern. *See, e.g.*, *300 Broadway v. Martin Friedman Assocs., P.C.*, 2009 U.S. Dist. LEXIS 95069, at *16-17 (D.N.J. Oct. 13, 2009); *Rebish v. Great Gorge*, 541 A.2d 237, 241 (N.J. Super. Ct., App. Div. 1988). The fact that evidence proving the enterprise's existence and the pattern of racketeering activity can be the same, (Opp. Br. at 25, n.23), is irrelevant, as it does not excuse the plaintiff of the obligation to come forward with evidence sufficient to satisfy the enterprise element, which is separate and distinct from the pattern of racketeering activity element. *Ball II*, 661 A.2d at 261.

participation, (Opp. Br. at 26), fails.[20]  The securities law cases cited by the Trustee, (Opp. Br. at 26), do not support the proposition posited by the Trustee that alleged false statements made after the alleged fraudulent scheme is perpetrated can amount to actual knowledge and participation.  Rather, these securities law cases stand for the unrelated proposition that reckless disregard of the truth of a statement or omission, which is *part* of the fraudulent scheme, is sufficient to establish scienter.  (*Id.*)  Moreover, these cases are not apt because "[r]ecklessness, as opposed to actual intent, suffices for a 10b-5 violation."  *Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264, 1283 (D.N.J. Aug. 31, 1990) (Opp. Br. at 26.)  This is a lower pleading standard than in RICO actions, in which recklessness is insufficient.

The Trustee also asserts, in probably one of the more conclusory statements made to this Court, that Santander "*willfully* disregarded *obvious* signs that its financial services were *being used for criminal purposes*."  (Opp. Br. at 26 (emphasis added).)  In support of that loaded statement, however, the Trustee merely cites to various purported red flags of alleged improper activity in certain Santander accounts, (Opp. Br. at 24-26, 29-30), which do not amount to actual knowledge.[21]  (Mov. Br. at 24-27.)  Indeed, Santander cited numerous cases from the banking industry finding that a financial institution's failure to uncover purported fraud based on alleged red flags of fraud are insufficient to plead actual knowledge.  (Mov. Br. at 24-27.)  The Trustee failed to address even one of these cases.[22]

---

[20]  It is a threshold issue that the Trustee's allegations that Finnerty and Green testified falsely are nothing more than rank speculation and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

[21]  The cases cited by the Trustee, (Opp. Br. at 26), do not concern simply alleging red flags of fraud, rather, these cases, unlike here, concerned actual proof of recklessness sufficient to establish § 10(b) liability based upon highly-detailed allegations that defendants received actual notice of wrongdoing but failed to act.  *See In re Tyco Int'l Ltd.*, 2007 U.S. Dist. LEXIS 42401, at *30-31 (D.N.H. Jun. 11, 2007) (auditing committee ignored specific reports that bonuses were being improperly recorded); *In re Ikon Office Solutions, Inc.*, 66 F. Supp. 2d 622, 629-31 (E.D. Pa. Sept. 14, 1999) (auditor was informed that the company's CFO was altering accounts and/or instructing others to do so; auditor also knew that problems from prior audit had not been remedied); *United States v. MoneyGram Int'l, Ltd.* (Opp. Br. at 26-27) (company's senior management rejected its internal Fraud Department's recommendation to close outlets or terminate agents that were under investigation by the Federal Trade Commission).

[22]  The Trustee does, however, cite to New Jersey's Uniform Fiduciaries Law ("NJUFL"), N.J.S.A. § 3B:14-55, for the proposition that a bank may be liable for acting in "bad faith" even when it lacks actual knowledge of a fiduciary's misdeeds.  (Opp. Br. at 30-31).  Of course, the Complaint does not allege a violation of NJUFL, and the NJUFL negates proof of actual knowledge of the fiduciary's misconduct by its express statutory terms.  "Bad faith" is also a term of art in the NJUFL statute and has no relevance to a NJ RICO claim.

The Trustee's statement that Santander "knew that Chalmers, as the purported Trustee of the Ministrelli Trust, owed fiduciary duties to LSBPA," (Opp. Br. at 29), is wholly unsupported.  There are no fact-specific allegations to reasonably infer that Santander knew that Chalmers "purportedly" owed a fiduciary duty to LSBPA.  Rather, the Complaint summarily alleges that Chalmers opened the Ministrelli Account "purportedly for the benefit of the Debtors."  (Compl. ¶¶ 72, 81, 229.)  As Santander has stated, (Mov. Br. at 1, 37-38), and the Trustee has not refuted, the Debtors never had an account with Santander.

Finally, the Trustee appears to be seeking a negative inference related to pleading actual knowledge based "most egregiously" on Santander's "three-year-cover-up effort of the Ministrelli Theft."  (Opp. Br. at 27.)  The alleged "cover-up" consists of Finnerty and Green purportedly destroying their notary books and allegedly providing false testimony, all of which took place after the alleged Ministrelli Trust Theft, and Santander's alleged destruction of "countless emails," which Santander has demonstrated is patently unfounded.  None of the cases cited by the Trustee support his proposition that his burden of alleging actual knowledge is somehow lessened, especially since the alleged "spoliation" of email is demonstrably false.

The Complaint is barren of any allegations of overt interactions between Santander and the Non-Party Conspirators concerning the enterprise.  The Trustee's failure to come forward with any specific facts establishing Santander's knowing and purposeful participation in the enterprise gives rise to the inescapable conclusion that no such facts exist.[23]

Similarly, when challenged to cite specific, non-conclusory allegations that Santander participated in Finnerty and Green's wrongful conduct, so as to support the imposition of vicarious liability, the Trustee cites simply to the opening of several bank accounts involved in the Ministrelli Trust Theft and the bald claim that the "Ministrelli Conspirators . . . knew that Santander would

---

[23]  It is noteworthy that the Trustee references Santander's alleged purposeful and knowing participation almost exclusively with regard to the Ministrelli Trust Theft.  What little ancillary involvement Finnerty may have had with the alleged Ministrelli Trust Theft, there is *no* nexus between Santander and the Debtors Ponzi Scheme and

willingly provide false notarizations." (Opp. Br. at 27-28.) Such allegations fail to support an inference

that Finnerty and Green were knowing participants in the enterprise, (Mov. Br. at 22), let alone support

an inference that Santander directed or encouraged Finnerty and Green's alleged wrongdoing.

The Trustee's assertion that Santander is vicariously liable because "Santander's highest levels

of management have actively participated in the subsequent cover-up," (Opp. Br. at 28), is untenable.

As support for this claim, the Trustee merely cites to two allegations that Finnerty's superiors were

alerted to W. Kwasnik's appearance at the Westmont Branch on June 21, 2010. (Compl. ¶¶ 54, 108.)

There are no specific allegations of a "cover-up" by Finnerty and Green's supervisors.

### D.    The Alleged NJ RICO Acts Are Not "Related"[24]

The Trustee's effort to portray the three unrelated alleged frauds as somehow related, (Opp. Br.

at 31-33), is not persuasive.[25] The Trustee's suggestion that the "purpose" and "result" of every RICO

scheme is "profit" and "theft," respectively, (Opp. Br. at 32), plainly render those concepts so broad and

ill-defined as to nullify RICO's relatedness requirement. Similarly, reducing the "method" for

perpetrating a RICO scheme to a label for an underlying predicate act, in this instance, "money

---

the Hope Now Fraud, as the Trustee's Opposition Brief confirms.

[24] Contrary to the Trustee's contention, (Opp. Br. at 31), relatedness can be resolved on a motion to dismiss. *See Rolls-Royce Motor Cars v. Schudroff*, 929 F. Supp. 117, 127 (S.D.N.Y. May 28, 1996); *Leibholz v. Hariri*, 2011 U.S. Dist. LEXIS 41246, at *16-17 (D.N.J. Apr. 15, 2011). The Trustee's citations for this contention, (Opp. Br. at 31), are not persuasive. The referenced quotation from *State v. Ball*, 632 A.2d 1222 (N.J. Super. Ct., App. Div. 1993) ("*Ball I*"), pertains to the issue of whether the evidence established single or multiple conspiracies, not the relatedness of the alleged racketeering acts. 632 A.2d at 1241. *Krasny v. Bagga (In re Jamuna Real Estate LLC)*, 357 B.R. 324, 327 fn.1 (Bankr. E.D. Pa. Dec. 20, 2006), does not concern "relatedness"; rather, the sole issue was whether the claim was a core, related proceeding.

[25] The Trustee includes the Lacey Fraud in his RICO relatedness chart, (Opp. Br. at 32), but the Trustee does not cite the Lacey Fraud once in his 15-page NJ RICO cause of action, (Compl. ¶¶ 170-219), which includes multiple references to the other alleged frauds. *See, e.g.*, Compl. ¶ 175 (setting forth the alleged RICO enterprise's purpose). Indeed, the Complaint does not even refer to the Lacey Fraud after the substantive facts. (Compl. ¶¶ 159-164.) The Trustee cannot amend his Complaint in his opposition brief to add the Lacey Fraud to his NJ RICO cause of action. *See Commw. of Pa. ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). The issue is also mooted by the fact Santander had no role in the alleged Lacey Fraud but for providing the purchaser of Lacey property a standard mortgage. (Compl. ¶ 161.)

laundering," (Opp. Br. at 32), swallows the concept of what "method" means for the purpose of relatedness.[26]

The Trustee's awkward attempt to identify the Debtors as the "victims" of all of the alleged frauds, (Opp. Br. at 32), is beyond the pale.  In the Complaint, the Trustee identifies the "targets" of the Debtors Ponzi Scheme as "elderly persons and disabled persons" who purchased the Debtors' fraudulent notes.  Similarly, the Trustee identifies the victims of the Hope Now Fraud as "financially desperate customers seeking to renegotiate their mortgages."  (Compl. ¶ 13.)  He cannot now allege that, in fact, the victim of these two frauds were the Debtors.

It is revealing that the Trustee must resort to such patently unpersuasive arguments to even patch together the suggestion that the Debtors Ponzi Scheme, the Hope Now Fraud and the Ministrelli Trust Theft are somehow "related."  The bottom line, which the Trustee cannot avoid, is that the Debtors Ponzi Scheme, as the Court well knows, was a Ponzi scheme perpetrated by the Debtors to defraud investors into buying the Debtors' fraudulent notes, and the Hope Now Fraud, as the Complaint alleges, was a scheme by M. Kwasnik to defraud distressed mortgagors into paying for services they never received.  Neither of these alleged schemes to defraud investors and buyers of mortgage services, respectively, is remotely related to the Ministrelli Trust Theft.

The Trustee's statement that the relatedness inquiry is "moot" because the "numerous predicate acts committed in services of each of the schemes renders each an independently cognizable racketeering scheme," (Opp. Br. at 32) conflates the elements of enterprise and pattern of racketeering, effectively undermining the statutory requirements of NJ RICO.  Nor do the cases cited by the Trustee support that contention; rather, they demonstrate schemes that, unlike here, show sufficient relatedness. *See Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364, 373-74 (D.N.J. 1999) (specific facts supported conclusion that acts were related where three banks were in negotiations for two mergers at the same time; the merger agreements, proxy statements and prospectuses had similar participants and

---

[26]  It is noteworthy that while M. Kwasnik is not a Ministrelli Conspirator, (Compl. ¶ 41), for "relatedness"

results; and participants in each merger were aware of the other merger and results); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 866 F.Supp.2d 315 (D.N.J. Dec. 20, 2011) (ample facts supporting relatedness of the defendants' acts with the scheme where, as part of a deceptive debt adjustment scheme, plaintiff was contractually obligated to open and maintain a bank account with defendants, a bank and a processing agent, both of whom engaged in illegal debt adjustment activities by depleting the funds in that account). *Ball I*, 632 A.2d at 1245-46 (relatedness supported by evidence that defendants embraced criminal conduct for the common purpose of facilitating the illegal dumping operation and the incidents of racketeering "were not merely isolated incidents"). The other cases cited by the Trustee contain no substantive discussion or analysis of relatedness. *See Mayo, Lynch & Assocs., Inc. v. Pollack*, 799 A.2d 12 (N.J. Super. Ct., App. Div. 2002); *Capital First Corp. v. Todd*, 2006 WL 3827329 (D.N.J. Dec. 27, 2006).

**E.      The Trustee Fails to Adequately Allege the Predicate Acts**

1.      Intent Lacking for Predicate Acts I through VIII

In response to Santander's challenge that the Complaint fails to alleges facts supporting the requisite element of knowing intent in Predicate Acts I-VIII, (Mov. Br. at 30), the Trustee incorporates by reference his response to Santander's alleged participation in an enterprise, (Opp. Br. at 33), which Santander has previously established fails to sufficiently allege knowing participation. *See supra* at Point III.C.[27]

2.      Aiding and Abetting Predicate Acts II, IV, VI and VIII

The Trustee fails to distinguish Santander's authority that there is no private cause of action for federal aiding and abetting claims, such as predicate acts based on purported violations of the Bank Secrecy Act. (Mov. Br. at 30-31; Opp. Br. at 33, n.26.) Accordingly, the Trustee lacks standing to

---

purposes, the Trustee believes he is a Ministrelli Trust Theft "Participant." (Opp. Br. at 32.)

[27] The Trustee's argument with regard to bank fraud, (Opp. Br at 34), ignores the controlling, dispositive case law cited by Santander. (Mov. Br. at 29-30.)

assert federal aiding and abetting claims for bank fraud, sale and transportation of stolen property, money laundering and mail and wire fraud as predicate acts.[28]

3.    Theft by Deception, Falsifying Records, Forgery and Fraudulent Practices

In the Opposition regarding the Theft by Deception, Falsifying Records and Forgery and Fraudulent Practices predicate acts, the Trustee merely reiterates conclusory allegations that Santander provided intentionally false statements in aid of the Ministrelli Trust Theft and rendered "false testimony in these proceedings to conceal it."  (Opp. Br. at 34).  As discussed *supra* at Point III.C, these allegations fall far short of establishing Santander's knowing participation in an enterprise and they do not satisfy the heightened pleading standard under Rule 9(b) to survive a motion to dismiss.[29]

## IV.    THE RICO CONSPIRACY CLAIM SHOULD BE DISMISSED

Contrary to the Trustee's argument, (Opp. Br. at 35), a deficient RICO conspiracy claim is subject to dismissal on a Rule 12(b)(6) motion.  *See, e.g., Zahl v. N.J. Dep't of Law & Pub. Safety*, 2010 U.S. Dist. LEXIS 98596, at *5-9 (D.N.J. Sept. 21, 2010).

"Underlying a § 1962(d) claim is the requirement that plaintiff must show that defendants agreed to the commission of a 'pattern of racketeering.'"  *Breslin v. Brainard*, 2003 U.S. Dist. LEXIS 19609, at *45 (E.D. Pa. Oct. 14, 2003) (citation omitted).[30]  The federal RICO conspiracy claim should be dismissed because the Complaint provides no supporting facts, direct or otherwise, which would allow the Court to draw the inference that Santander knowingly formed an agreement with any of the Non-Conspirators to participate in the alleged conspiracy.

## V.    THE NEW JERSEY CONSUMER FRAUD ACT CLAIM SHOULD BE DISMISSED

---

[28]  In addition, rather than addressing the cases cited by Santander holding that providing regular banking services does not constitute substantial assistance, (Mov. Br. at 31), the Trustee argues that a lesser standard of proof is sufficient.  (Opp. Br. at 33-34, n.27).  The Trustee's support, *Failla v. City of Passaic*, 146 F.3d 149, 155 (3d Cir. 1998), is inapt because *Failla* addresses aiding and abetting liability under the express terms of New Jersey's Law Against Discrimination, N.J.S.A. § 10:5-12, which bears no relevance to the predicate acts alleged in this action.

[29]  The Trustee fails to address any of the substantive deficiencies in the Theft by Deception predicate act.  (Opp. Br. at 32-33, n.22.)

[30]  The Third Circuit has emphasized that those who innocently provide services will not incur § 1962(d) liability; rather "liability will only arise from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity.  *Smith v. Berg*, 247 F.3d 532, 537 n.11 (3d Cir. 2001).

The Trustee does not even attempt to particularize the manner in which the Debtors suffered an "ascertainable loss," a prerequisite for standing to assert a claim under the NJCFA.  Similarly, in attempting to establish that the Debtors received services from Santander, the Trustee cites allegations in the Complaint that do not remotely, let alone with the particularity required under Rule 9(b), establish how Santander's allegedly fraudulent conduct was made "in connection" with any services rendered to the Debtors.  (Opp. at 37.)  Thus, the Trustee has failed to overcome Santander's argument that the Debtors lack standing to assert a claim under the NJ CFA.[31]

## VI.    THE NEGLIGENCE AND FAILURE TO SUPERVISE CLAIMS SHOULD FAIL

The Trustee does not refute Santander's statement that the Debtors had no bank accounts at Santander.  (Mov. Br. at 1, 37-38.)  Rather, the Trustee relies on the Complaint's peculiar allegations about Ministrelli Trust being opened "purportedly for the benefit of LSBPA."  (Compl. ¶¶ 72, 81, 257.)  This vague allegation, however, does not give rise  to a "special relationship." The Complaint does not allege that Santander had actual notice the account was opened "purportedly" for LSBPA's benefit, and the Trustee's "purportedly for benefit of LSBPA" mantra merely underscores the fact that this "purported" benefit to LSBPA was not "express."[32]

## VII.    THE AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED

The Trustee does not identify any allegations that support aiding and abetting liability under New Jersey law.  *See Pricaspian Dev. Corp. v. Gonzalez*, 2013 U.S. Dist. LEXIS 148713, at *19 (D.N.J. Oct. 16, 2013) (citation omitted) (a plaintiff must show that the defendant "knowingly and substantially

---

[31]  The allegations in the Complaint also make it clear that Santander's allegedly fraudulent conduct did not induce the Debtors to purchase anything.  The Trustee characterizes the scope of NJCFA as broad enough to apply to "any" conduct in connection with the offering, sale or provision of consumer credit, (Opp. Br. at 37), but in order to sustain the requisite ascertainable loss, a plaintiff must have been lured into a purchase.  This is readily demonstrated in the cases cited by the Trustee.  *See Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1119 (N.J. 2011); *In re O'Brien*, 423 B.R. 477, 488 (Bankr. D.N.J. 2010).  Without such a standing requirement, businesses would be subject to burdensome lawsuits and treble damages from hypothetical consumers.

[32]  Although the Trustee argues that Santander "was on notice of [the] fact" that "LSBPA was the purported beneficial owner of the Ministrelli Trust bank account," (Opp. Br. at 7, fn. 9 (citing Compl. ¶ 72), the Complaint does not allege that Santander was on notice that the Ministrelli Account was "purportedly" opened on behalf of LSBPA.

participated in the wrongdoing"). For the reasons stated *supra* at Point III.C., the Complaint fails to show that Santander had actual knowledge of the enterprise's purported wrongdoing or willingly associated itself with or substantially assisted the alleged illegal activities of the enterprise.

## VIII.   THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

The Trustee's assertion that Santander "undeniably received substantial benefits" from its alleged participation in the alleged schemes, (Opp. Br. at 39), is untenable.  Santander did not receive "fees and services charges," (Opp. Br. at 39), from its purported participation in the alleged schemes, it received those fees by providing ordinary banking services.  The cases cited by the Trustee do not support the proposition that Santander's receipt of such fees – that might somehow, indirectly, have been paid with funds stolen from the Debtors – constitutes a "benefit" to be disgorged through a claim of unjust enrichment.  Under the circumstances, the Debtors did not confer a benefit and Santander's retention of any funds it received for its banking services would not be unjust.

## CONCLUSION

For the forgoing reasons, defendant Santander Bank, N.A. respectfully submits that the Complaint should be dismissed in its entirety.

Dated: May 23, 2014

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

*Of Counsel*

By:_____/s/ Richard A. Barkasy_____

Mathew B. West
Allison A. Snyder
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, New York  10005
(212) 973-8000 (telephone)
mwest@schnader.com
asnyder@schnader.com

Richard A. Barkasy (#4683)
Fred W. Hoensch (#5761)
824 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)
rbarkasy@schnader.com
fhoensch@schnader.com

*Attorneys for Santander Bank, N.A.*