**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIBERTY STATE BENEFITS OF | ) | |
| DELAWARE, INC., *et al.*, | ) | Case No. 11-12404(KG) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| RICHARD W. BARRY, As Chapter 11 | ) | |
| Trustee For the estates of LIBERTY | ) | |
| STATE BENEFITS OF DELAWARE, | ) | Adv. Pro. No. 14-50020(KG) |
| INC., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANTANDER BANK, N.A. formerly | ) | |
| Known as Sovereign Bank, N.A., | ) | |
| | ) | |
| Defendant. | ) | **Re: Dkt. Nos. 20. 37** |
| | ) | |

**MEMORANDUM OPINION[1]**

On January 10, 2014, Richard W. Barry, Chapter 11 Trustee (the "Trustee" or the

"Plaintiff") for the estate of Liberty State Benefits of Delaware, Inc. ("LSBDE"), Liberty

State Benefits of Pennsylvania, Inc. ("LSBPA"), Liberty State Financial Holdings Corp.

("LSFH"), and Liberty State Credit, Inc. ("LSCI") (collectively, the "Debtors")

commenced this adversary proceeding against Santander Bank, N.A. ("Santander" or the

"Defendant") alleging numerous violations of both New Jersey law and U.S. federal law.

---

[1] On June 2, 2014, this Court entered into an order declaring the Trustee's claims to be non-core under 28 U.S.C. § 157(b)(1) . Order Determining Core and Non-Core Claims, D.I. 62. Thereafter, the District Court denied Santander's Motion to Withdraw the Reference. Memorandum Order Denying Motion For Withdrawal Of Reference, D.I. 65. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

More specifically, the Trustee's complaint alleges that Santander aided and abetted various Debtor affiliates in effectuating a series of transactions designed to steal the Debtors' assets. In response to the Complaint, Santander filed this motion (the "Motion") to transfer the adversary proceeding to the United States District Court for the District of New Jersey. For the following reasons, the Court concludes that the Defendant's motion to transfer venue should be denied.

## FACTS

On July 29, 2011 (the "Petition Date"), the Debtors filed a chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (Case No. 11-12404 (KG)).

On January 10, 2014, Richard A. Barry (the "Trustee"), acting as Chapter 11 Trustee for the Debtors, commenced (the "Complaint") this adversary proceeding (the "Adversary Proceeding") against Santander. In the Complaint, the Trustee asserts eleven causes of action stemming from a series of transactions allegedly designed to convey various assets of the Debtors to various non-Debtor entities (the "Non-Party Conspirators") for minimal to no value. Compl. ¶¶ 170-261. According to the Complaint, Santander and its employees were instrumental in enabling the Non-Party Conspirators to complete the theft. *Id.* The four transactions that gave rise to the Complaint are as follows:

### Theft of The Ministrelli Trust

The Ministrelli Trust was the Debtors' most valuable asset prior to the Petition Date. Compl. ¶ 6. The Trust held a life insurance policy of a wealthy individual with a face value of $11.5 million. *Id.* The Debtors acquired the beneficial interest in the Trust in December 2008. Compl. ¶ 57. Through a series of transactions involving the creation of numerous

2

bank accounts designed solely to facilitate the transfer of the Trust proceeds, Santander allegedly aided and abetted the Non-Party Conspirators in "conspir[ing] to steal the Ministrelli Trust, sell[ing] the policy to a third party, and launder[ing] the sales proceeds through their personal Santander accounts to avoid detection before ultimately depositing the funds in an account owned by [certain Non-Party Conspirator affiliates]."   Compl. ¶ 58.

The Trustee's claims against Santander with respect to the Ministrelli Trust Theft are primarily based upon two grounds.  The first ground is that Santander's employees falsely notarized multiple documents which enabled the Non-Party Conspirators to complete the sale.  Compl. ¶ 69.  The second is that Santander and its employees willfully ignored various red flags which indicated that the Non-Party Conspirators may have been engaging in fraudulent activity.  *See* Compl. ¶ 70-77, 86-94.

A more detailed description of Santander's misconduct can be found in the Complaint.  However, certain specific facts are particularly relevant to the Motion.  First, neither party disputes that Santander's employees notarized various relevant documents at the bank's Westmont, New Jersey branch (the "Westmont Branch").  *See* Def.'s Br. 4, D.I. 20.   More specifically, two Santander employees allegedly notarized five fraudulent documents that enabled the Non-Party Conspirators to transfer both the Trust's title and its sale proceeds.  Compl. ¶¶ 3, 80, 83-85, 185.  The Non-Party Conspirators then funneled such proceeds through the many accounts that they had opened at the Westmont Branch. Def.'s Br. 5.  These individuals allegedly set up the accounts solely for the purpose of laundering the Trust sale proceeds and concealing their fraudulent activity.  *See, e.g.*

3

Compl. ¶¶ 70-77.  This series of acts effectively enabled the Non-Party Conspirators to steal $1.75 million in sale proceeds from LSBPA.  *Id.* at ¶ 78.

"Hope Now" Fraud

The Hope Now Mortgage Fraud was a scheme designed by various individuals and entities including Michael Kwasnik ("MKwasnik"), Santander, and the law firm Kwasnik, Rodio, Kanowitz & Buckley ("KRKB") (collectively, the "Hope Now Conspirators" or "Hope Now Modifications") to "steal funds from desperate customers seeking to renegotiate their mortgages."  Compl. ¶ 13.  Adopting a name similar to the federal government's "Hope Now Alliance Program," the Hope Now Conspirators "solicited hundreds of consumers with troubled mortgages, misrepresenting themselves as a 'powerful ally' affiliated with the federal government."  *Id.*  In exchange for an upfront fee, the Hope Now Conspirators promised prospective clients that they would help them to renegotiate their mortgage loans with their lenders.   *Id.*  According to the Trustee, MKwasnik allegedly co-mingled funds between the Debtors' trust accounts and the Hope Now Accounts.  *Id.* at ¶ 14.  MKwasnik and KRKB allegedly "stole at least $237,000.00 from the Debtors' accounts to facilitate their Hope Now Scheme and deposited those funds into their account at Santander used to launder their ill-gotten proceeds from the scheme."  *Id.*

The Trustee asserts that Santander profited from the Hope Now Conspirators' actions by incurring numerous insufficient funds fees and other related fees. *Id.* at ¶ 15.  As was the case with the Minsitrelli Trust Theft, the Conspirators opened multiple accounts at the Westmont Branch in order to facilitate the Hope Now Scheme.  Moreover, Santander

4

allegedly ignored countless red flags indicative of fraudulent activity including "[u]p to sixteen checks returned on credit card chargebacks per day," "[d]eposits of up to forty checks in small – often identical – sums every day," and "multiple stop requests per day." *Id*.  During this time, Santander was aware or should have been aware that the Federal Trade Commission ("FTC") had commenced proceedings against the Hope Now Conspirators for fraud in March, 2009.  Compl. ¶¶ 135-138.  Nonetheless, employees at the Westmont Branch continued to open up new accounts for the Hope Now Conspirators while ignoring these various indicators of fraud.  *Id*.  Both KRKB and Hope Now Modifications were based out of Southern New Jersey and held their business bank accounts at the Westmont Branch.  Def.'s Br. 6.

<u>Michael Kwasnik's Ponzi Scheme</u>

According to the Complaint, Michael Kwasnik further defrauded the Debtors by "misappropriating or misapplying at least $13 million in proceeds from the Debtors' debt offerings as part of a Ponzi scheme targeting elderly persons and disabled persons." Compl. ¶ 10.  MKwasnik allegedly stole the proceeds from these debt offerings, saddling the Debtors with new liabilities "without the benefit of the proceeds from the notes." *Id*. In order to create the illusion that the debt instruments were offering high rates of interest, Kwasnik paid off earlier investors with the proceeds of the later sales.  *Id*.

The Trustee notes that MKwasnik and his confederates routinely laundered the proceeds of the offerings through various Santander accounts they had set up at the Westmont Branch.  *Id*. at ¶ 11.  As was the case in the Hope Now Conspiracy, Santander ignored multiple indicia of fraud.  *Id*.  In addition to overlooking the red flags discussed

above, Santander also failed to investigate many high volume accounts with minimal balances, "deposits followed by immediate withdrawals," "multiple transfers between related accounts," and "transactions inconsistent with the account holders' businesses, occupations, or income levels." *Id.* In June 2013, MKwasnik pled guilty to second and third-degree money laundering in connection with these schemes. *Id.* at ¶ 12.

Theft of the Lacey Property

Santander allegedly assisted the Non-Party Conspirators in the theft of real property owned by LSBPA in Lacey, NJ (the "Lacey Property"). Compl. ¶ 16. The Trustee claims that the Non-Party Conspirators colluded to transfer the Lacey Property away from the Debtors and reap the profits for themselves. *Id.* He alleges that Santander facilitated the sale when two Westmont Branch employees fraudulently notarized the deed and other documents necessary to complete the transfer. *Id.*

The Trustee's Complaint and The Defendant's Motion to Transfer Venue

The Trustee asserts eleven causes of action and seeks to recover damages that the Debtor incurred as a result of the above transactions. His claims include: (a) racketeering under NJ RICO, (b) conspiracy to violate RICO, 18 U.S.C. § 1962(d), (c) violation of New Jersey's Consumer Fraud Act, (d) negligence, (e) aiding and abetting conversion, (f) aiding and abetting fraud, (g) two causes of action for aiding and abetting breach of fiduciary duty, (h) unjust enrichment, failure to train and supervise employees, and (j) attorneys' fees pursuant to NJ RICO and NJ Consumer Fraud Act.

On March 19, 2014, Santander filed this motion to transfer venue (the "Motion") asserting that the transactions giving rise to the Trustee's claims bear no connection to the

State of Delaware. The Defendant claims that because Santander's involvement in the transactions occurred primarily at the Westmont Branch, this Adversary Proceeding should be tried in the United States District Court for the District of New Jersey. The Court now rules on this issue.

## DISCUSSION

Title 28 of the United States Code permits a federal court to transfer a case to another district where jurisdiction is proper. 28 U.S.C. § 1412. "A district court may transfer a case or proceeding under title 11 [11 USCS §§ 101 et seq.] to a district court for another district, ***in the interest of justice or for the convenience of the parties***." *Id*. (emphasis added). In the context of an adversary proceeding brought by a trustee in bankruptcy, Section 1409 creates a presumption that venue is proper in the forum where the bankruptcy petition was filed. 28 U.S.C. § 1409(a). "Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." *Id.*

Courts in the Third Circuit generally examine twelve factors when determining whether transferring a case would be "in the interest of justice or for the convenience of parties." *See, e.g., OCB Rest. Co., LLC v. Vlahkais (In re Buffets Holdings, Inc.)*, 397 B.R. 725, 727 (Bankr. D. Del 2008) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995)). These twelve factors are:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses - but only to the extent that the witnesses may

7

actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Jumara*, F.3d at 879-80. The moving party carries the burden of demonstrating that the bulk of the factors support a venue transfer. *Id.* No specific number of favorable factors is necessary nor is the lack of any single factor dispositive: the decision to transfer lies "within the sound discretion of the court." *Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del. Inc.)*, 296 B.R. 323, 325 (Bankr. D. Del. 2003) (citing *Frazier v. Lawyers Title Ins. Co. (In re Butcher)*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985)). Indeed the Supreme Court has noted that the decision to transfer venue must be analyzed on "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In the context of an adversary proceeding brought within an underlying chapter 11, courts must conduct an additional inquiry when determining whether a transfer is in the interest of justice. Bankruptcy courts in the Third Circuit have modified the analysis in order to better comport with the policies of the Bankruptcy Code (the "Code"). *See Hechinger Inv. Co. of Del., Inc. v. M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, 288 B.R. 398 (Bankr. D. Del 2003); *Oglebay Norton Co. v. Port (In re ONCO Inv. Co.)*, 320 B.R. 577 (Bankr. D. Del 2005); *PermaLife Prods., LLC v. TSJ Dirt, LLC (In re PermaLife Prods., LLC),* 432 B.R. 503 (Bankr. D.N.J. 2010). Because chapter

11 of the Code was designed to "facilitate[e] the reorganization and rehabilitation of the debtor as an economically viable entity . . . [while] protecting creditors' interests by maximizing the value of the bankruptcy estate," these two policy concerns create a strong impetus to maintain an adversary proceeding in the court where the debtor filed its chapter 11 petition. *See In re Phila. Newspapers, LLC*, 599 F.3d 298, 303 (3d Cir. 2010) (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004)). When a trustee or debtor in possession is forced to litigate an adversary proceeding in a new forum, the estate must incur additional expenses and increased time delay – as a result, the creditors' overall recovery may be reduced. *See HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l Inc.)*, 312 B.R. 44, 46 (Bankr. D. Del. 2004) (noting that prosecuting an adversary proceeding in a new district can increase the overall expenses of the estate). When analyzing the twelve *Jumara* factors, a bankruptcy court should always consider the interests of the estate and its creditors. *Id.*

In *Hechinger Investment Company*, the court articulated that "[t]here is a strong presumption in favor of maintaining venue where the bankruptcy case is pending. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Hechinger Inv. Co. of Del., Inc.* 288 B.R. at 401. In addition to examining some of the factors outlined above, the court also considered an additional factor – the economics of the estate's administration. *Id.* The rule in *Hechinger* essentially adopts the multi-factor test set forth in *Jumara*. *Id.* However, it requires the party seeking a transfer to meet a greater burden than the one required in an ordinary civil proceeding. *Id.* In *PermaLife Products,* the court further distinguished the venue transfer analysis in the

9

context of an adversary proceeding in chapter 11. *PermaLife Prods., LLC*, 432 B.R. at 517. "[T]here can be no rigid formularizing of discretionary venue transfer determinations; nor should the bankruptcy context of an adversary proceeding undertaken within a bankruptcy case be diluted or neutralized by overemphasizing the more general catalog of broad civil action transfer considerations." *Id.* Concluding that the defendant's motion to transfer venue should not be granted, the court relied in part on the Second Circuit's guidance in *Manville Forest Products*. *Id.* (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d. Cir. 1990). "***The 'interest of justice' component of § 1412 is a broad and flexible standard*** which must be applied on a case-by-case basis. ***It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate***, judicial economy, timeliness, and fairness." *Id.* (emphasis added).

In sum, there is an abundance of authority indicating that the economics of the estate's administration must be incorporated into any venue transfer analysis in the bankruptcy context. In light of this authority, this Court will adopt the twelve factor test set forth in *Jumara*. The Trustee's need to minimize estate expenses and maximize creditor recovery will be taken into account within each factor that calls for an examination of public policy, economic effects on the parties or general practical considerations. Moreover, the Defendant's burden is higher than it would otherwise be in the ordinary civil litigation context. In order to defeat the presumption that venue is proper in this Court, the twelve *Jumara* factors must strongly favor the Defendant

The first *Jumara* factor is the plaintiff's choice of forum.  Santander claims that because the Plaintiff's decision to file its chapter 11 petition in Delaware was based on "blatant forum shopping," the Trustee's choice of forum for this adversary proceeding should be granted less deference.  Def.'s Br. 8.  The Defendant's argument fails to distinguish, however, the fact that the pre-petition Debtor and the post-petition DIP (or Trustee in this case) are two distinct legal entities.  In fact, the Trustee was appointed to replace the Debtors' then-existing management shortly after the Petition Date.  *See* Order Directing Appointment of Chapter 11 Trustee, D.I. 77 (Case No. 11-12404).  The Trustee presumably had nothing to do with the decision to file for chapter 11 in Delaware, and his decision to file the Adversary Proceeding in this forum was the most logical choice in light of the underlying bankruptcy proceeding.  As a result, the Court must respect the Trustee's desire to litigate the adversary proceeding in this forum.

The second factor, the Defendant's choice of forum, weighs in favor of Santander.  Neither party disputes that Santander would prefer to litigate this matter in the District of New Jersey.  Nevertheless, courts in the Third Circuit generally show greater deference to the plaintiff's choice of forum.  *See HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l Inc.)*, 312 B.R. 44, 46 (Bankr. D. Del. 2004) (citing *Jumara*, 55 F.3d at 879-80).  Therefore, factors one and two collectively weigh in favor of the Trustee.

The third factor, whether the claim arose elsewhere, weighs in favor of Santander.  Santander correctly notes that the events most factually relevant to the Trustee's claim occurred at their Westmont Branch.  Def.'s Br. 9-10.  The Trustee, on the other hand, argues that Santander's employees' alleged false testimony before this Court creates a strong

11

nexus with Delaware.  Tr.'s Br. 15, D.I. 37.  While the Trustee's claim has merit, the events that transpired at the Westmont Branch constitute the core factual underpinning of the RICO, negligence, failure to supervise, and other civil claims.  As a result, the Court finds that the third factor weighs in favor of the Defendant.

The fourth factor, location of the books and records, favors the Trustee.  Although the Defendant correctly notes that "[m]any of the books, records and documents related to this adversary proceeding are located in New Jersey," Santander has already produced numerous documents relevant to this proceeding. *See* Def's Br. 10; Tr.'s Br. 16. Furthermore, should the need arise for additional discovery requests, such documents are readily accessible as Westmont, NJ is only 33 miles from this courthouse.  Additionally, because discovery in this matter is mainly limited to paper exchanges, "the physical location of books and records is of less concern." *HLI Creditor Trust*, 312 B.R. at 47.

With respect to the fifth factor, convenience of the parties as indicated by their relative physical and financial condition, the efficiency benefits to be gained from litigating this matter in New Jersey are minimal.  As noted above, Westmont is only 33 miles from this courthouse.  Santander's counsel is based out of Philadelphia, and their lead attorney is licensed to practice in Delaware.  The inconvenience of having to travel to Wilmington is minor.  On the other hand, the Trustee, as representative of the estate, would face a substantial burden if it were forced to litigate this case in New Jersey.  The Court recognizes the Trustee's concern that a venue transfer would "increase administrative expenses, lower the amounts available for distribution under the confirmed Plan and sap the temporal and financial resources of the Debtor." *HLI Creditor Trust*, 312 B.R. at 47 (quoting *Southwinds*

*Assocs., Ltd. v. Reedy (In re Southwinds Assocs. Ltd.)*, 115 B.R. 857, 862 (Bankr. W.D. Pa. 1990)).  In this particular matter, none of the Trustee's attorneys are licensed to practice law in New Jersey.  *See* Tr.'s Br. 17.  If the Trustee were forced to hire new counsel and litigate these claims in New Jersey, both the Trustee and the estate would be harmed.  *Id.* In *HLI Creditor Trust,* the court addressed this same concern noting that "the Plaintiff would have to hire another counsel, which would create an additional expense on the estate and ultimately deprive the creditors from additional recovery."  *Id.*  Accordingly, the Court finds that factor five weighs against a transfer.

The sixth factor also weighs in favor of the Trustee as the witnesses would only suffer a mild inconvenience if they were to travel from Southern New Jersey to Wilmington.  As noted in the Trustee's Brief, such witnesses are within the Court's subpoena power under rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure and rules 7004(d) and 9016 of the Federal Rules of Bankruptcy Procedure.  *See OCB Rest. Co.*, 397 B.R. at 729 (holding that factor six weighed in favor of a transfer because the witnesses in that case were not within the court's subpoena power under rule 45(c)(3)(a)(ii)). Moreover, "witnesses are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail."  *HLI Creditor Trust*, 312 B.R. at 47 (quoting *IRS v. CM Holdings, Inc.*, 1999 U.S. Dist. LEXIS 10054, No. CIV.A.97-695, 1999 WL 459754, at *4 (Bankr. D. Del. June 10, 1999)).  The fact that Camden may be a slightly more convenient location for the witnesses is not enough to rebut this presumption.

With respect to the seventh factor, both parties agree that a judgment would be equally enforceable in both jurisdictions.  Therefore, this factor weighs against a transfer.

13

Factor eight, practical considerations that would make the trial easy, expeditious, or inexpensive, weighs in favor of the Trustee. This Court is already familiar with the underlying events that triggered the Debtors' bankruptcy. The Trustee has filed seventy two (72) adversary proceedings related to the estate, many of which are based on the same set of facts as the Santander case. Tr.'s Br. 6. As these facts are detailed and complex, this Court's familiarity with such facts and its understanding of the Debtors' business as a whole would make the trial easier, more expeditious, and less expensive than it would be if it were to take place in New Jersey.

In its brief, Santander cites to authority suggesting that bankruptcy courts are not the ideal fora for adjudicating civil RICO claims. *See* Def.'s Br. 12 (citing *Green v. Mass. Cas. Ins. Co.*, 269 B.R. 782, 792 (N.D. Ill 2001)). In that particular case, however, the court was adjudicating an adversary proceeding within a consumer bankruptcy and not a business bankruptcy. *Green*, 269 B.R. at 786. In that specific context, hearing the claim in the district court tends to impose less of an interference with the administration of a debtor's estate as consumer bankruptcies tend to have fewer pre-petition creditors and claimants. Even if district courts are more equipped to adjudicate civil RICO claims, transferring the proceeding to the District of New Jersey would consume a significant amount of the Trustee's time and resources and would substantially interfere with the administration of the estate. As a result, the Court finds that factor eight weighs in favor of the Trustee.

Factor nine, the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, also favors the Trustee. Citing to *OCB Restaurant*s,

Santander argues that even a minimal reduction of the bankruptcy court's docket should lead to a favorable finding with respect to factor nine. Def.'s Br. 13. However, in *HLI Creditor Trust*, the court emphasized that the bankruptcy court's familiarity with the facts underlying an adversary proceeding can support a favorable finding for the non-moving party with respect to this factor. The Court concurs with this approach and concludes that the burden such a transfer would impose on the District of New Jersey outweighs the corresponding benefit conferred upon this Court. Because the District of New Jersey is not familiar with this case and the underlying fraudulent transactions, a district judge in New Jersey would be required to exert more time and resources familiarizing himself with the Debtors' bankruptcy, the Ministrelli Trust Theft, The Hope Now Fraud, the Kwasnik Ponzi Scheme, and the Lacey Property Theft.

While both the Trustee and the Defendant provide various statistics on the number of judicial vacancies in each district and the number of bankruptcies filed in each district, these numbers are potentially misleading without further inquiries. The Court is more persuaded by the argument that this Court's familiarity with the underlying facts supports a favorable finding for the Trustee with respect to factor nine.

With respect to factor ten, public policies of the forum, Santander argues that "[a] New Jersey court has a greater interest than this court in deciding a matter that concerns solely New Jersey law." Def.'s Br. 13. However, the District of New Jersey is a United States court and not a New Jersey state court. Federal district courts sitting in diversity simply interpret the state law of the underlying claims. Their rulings are not binding on the lower state courts. A decision rendered by a United States District Judge in New Jersey

15

would be no more binding than a decision rendered by this Court.  In fact, as Delaware is a common forum for both corporate bankruptcy and corporate shareholder litigation, Delaware courts routinely apply the laws of other states and countries in a wide range of disputes.  *See, e.g., In re Nortel Networks, Inc.*, 532 B.R. 494, 534 (Bankr. D. Del 2015) (applying Ontario law).

The Trustee, on the other hand, correctly points out that the policies of this Court and the Bankruptcy Code must be taken into consideration when analyzing factor ten.  Tr.'s Br. 20.  Keeping the Adversary Proceeding in this Court would best comport with the Code's policy of "protecting creditors' interests by maximizing the value of the bankruptcy estate." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 303 (3d Cir. 2010) (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004)).  As noted above, requiring the Trustee to use additional resources litigating this claim in a different forum could potentially reduce the overall value of the estate and the corresponding recovery by its creditors.  As a result, the Court finds that factor ten weighs in favor of the Trustee.

Factor number eleven, the familiarity of the judge with applicable state law, weighs in favor of the Defendant.  Although the Court agrees with the Trustee that there are no novel or unique issues before the Court in this adversary proceeding, the Court acknowledges that a New Jersey District Judge might be more familiar with New Jersey state law.

The twelfth and final factor, the local interest in deciding controversies at home, weighs in favor of the Trustee.  Although Santander's alleged contribution to the fraud took

place at the Westmont Branch, nonetheless, there are no novel or unique New Jersey legal issues pertinent to this adversary proceeding.

Contrary to Santander's assertion, this Court does have a strong interest in litigating the matter in Delaware. As the Trustee notes, "the home bankruptcy forum has a strong interest in accumulating assets belonging to the Debtors for distribution to creditors." Tr.'s Br. 21. Had this been an ordinary civil claim filed in the district court, the Court would agree with Santander's position that the District of New Jersey has a stronger local interest in hearing this claim. Nonetheless, this Court simply cannot ignore the local interest in resolving this matter in the forum where the Debtors' estate administration is currently taking place. Consequentially, factor twelve favors the Trustee.

After considering the twelve factors, the Court concludes that Santander has failed to meet its burden of demonstrating that the *Jumara* factors weigh "strongly in favor of the defendant." The key facts are that the underlying Chapter 11 case is pending in this district and there will be no inconveniences to the parties or the witnesses. The Court will deny Motion.

## CONCLUSION

For the aforementioned reasons, the Court will deny the Motion. An appropriate Order will issue.

Dated: September 16, 2015

KEVIN GROSS, U.S.B.J.